## PITTSBURGH PLATE GLASS CO. et al. v. NATIONAL LABOR RELATIONS BOARD.[1]

### Nos. 449–451.

Circuit Court of Appeals, Eighth Circuit.

July 23, 1940.

Rehearing Denied Aug. 12, 1940.

[1] For convenience we use the above title as that of the consolidated cases. Nos. 449 and 450, Orig., are entitled: "Pittsburgh Plate Glass Company, Petitioner, v. National Labor Relations Board, Federation of Flat Glass Workers of America, Affiliated with the Congress of Industrial Organizations, and Crystal City Glass Workers' Union, Respondents." No. 451, Orig., is entitled: "Crystal City Glass Workers' Union, Petitioner, v. National Labor Relations Board, Respondent."

J. W. McAfee, of St. Louis, Mo. (Igoe, Carroll, Keefe & McAfee, of St. Louis, Mo., and Leland Hazard and Joseph T. Owens, both of Kansas City, Mo., on the brief), for petitioner Pittsburgh Plate Glass Co.

Fred J. Hoffmeister, of St. Louis, Mo., for petitioner Crystal City Glass Workers' Union.

Laurence A. Knapp, Asst. Gen. Counsel, National Labor Relations Board, of Washington, D. C. (Charles Fahy, Gen. Counsel, National Labor Relations Board, Robert B. Watts, Associated Gen. Counsel, National Labor Relations Board, and Mortimer B. Wolf and Owsley Vose, Attys. National Labor Relations Board, all of Washington, D. C., on the brief), for respondent.

Before GARDNER and SANBORN, Circuit Judges, and COLLET, District Judge.

SANBORN, Circuit Judge.

The Pittsburgh Plate Glass Company, a Pennsylvania corporation, and the Crystal City Glass Workers' Union, an unaffiliated labor organization of the employees of the Company at its plant in Crystal City, Missouri, have petitioned for a review of an order of the National Labor Relations Board, the effect of which order is to require the Company to recognize its production and maintenance employees (with certain exceptions) at its six flat glass plants as the appropriate unit for collective bargaining; to require the Company to bargain collectively with the Federation of Flat Glass Workers of America as the representative of all such employees; and to forbid the Company to bargain with the representative of its employees at its Crystal City plant.

The main question presented is whether the Board's determination that the designated employees at all of the flat glass plants of the Company constituted an appropriate unit for collective bargaining, is arbitrary and capricious and therefore void.

The petitioners contend that the Board, in selecting the employees at the Company's six flat glass plants as an appropriate bargaining unit, did so arbitrarily and in disregard of the wishes of some 1500 of the 1800 employees of the Company at Crystal City, Missouri; that the Board's reasons for determining that the employees at all of the plants of the Company were an appropriate unit for purposes of collective bargaining are specious and unsupported by evidence; that the Board excluded evidence as to the wishes of the employees at the Crystal City plant, in violation of the Fifth Amendment to the Constitution of the United States; that the history of the collective bargaining which had been carried on within the unit designated did not justify the Board's decision; that its decision is inconsistent with its rulings in other cases; and that Section 9(b) of the National Labor Relations Act [ § 9(b), 49 Stat. 453; 29 U.S.C. § 159(b), 29 U.S.C. A. § 159(b) ] is an unconstitutional delegation of legislative power.

The Company is engaged in the manufacture, sale and distribution, among other things, of various types of flat glass and is a large employer of labor in connection therewith. It has, in all, six plants where such glass is made: two in Pennsylvania, and one in each of the following states: Ohio, West Virginia, Oklahoma, and Missouri (the Crystal City plant). A majority of all of its employees in the flat glass division of its business and a majority of all of its employees in each of its flat glass plants, excluding the plant at Crystal City, belonged to the Federation of Flat Glass Workers of America, a labor union affiliated with the Congress of Industrial Organizations. That union has been the representative of the flat glass workers in the plants, excepting those at Crystal City, for purposes of collective bargaining. The employees of the Crystal City plant had an independent labor organization known as the Crystal City Glass Workers' Union, which the Company had recognized as their bargaining representative. This was the situation when the Federation initiated, through the National Labor Relations Board, a proceeding which resulted in a determination by the Board that the Company should withdraw its recognition of the Crystal City Glass Workers' Union as the representative of its employees at Crystal City, on the ground that the union was Company-dominated and supported; a further proceeding which resulted in a determination by the Board that the appropriate unit for collective bargaining was the maintenance and production forces at all six glass plants of the Company, and that the Federation was the collective bargaining representative for all such employees in that unit; and a final proceeding which resulted in a determination by the Board that the Company, in refusing to accept the Board's determination as to the appropriate bargaining unit and in failing to recognize and bargain with the Federation as the representative of all employees in such unit, was guilty of an unfair labor practice.

The Crystal City plant is some 600 miles away from any other plant of the Company. The manufacturing methods employed in producing flat glass at that plant differ in some respects from those employed at other plants of the Company. The Crystal City plant has its own superintendent, who employs and discharges those who work in the plant. The business of the Company at that plant is subject to a large measure of local control. The various plants of the Company do not

exchange employees. All employees are, however, those of the Company, are paid by it and are subject to its control; all are engaged in furtherance of the same general enterprise—the manufacture of flat glass—and all have been treated substantially alike so far as wages, hours and conditions of employment are concerned. The flat glass division of the Company is a combination of plants, rather than an aggregation of plants. The Board, under the facts and circumstances disclosed by the evidence, properly might have determined that the employees at the Crystal City plant were a homogeneous group whose wishes as to representation for the purposes of collective bargaining should be respected and who constituted an appropriate unit for collective bargaining; but we think that it was not compelled to do so.

 It must be remembered that, within the limits of the jurisdiction conferred upon it, the power of a court or an administrative board to decide questions is not confined to deciding them correctly. Thompson v. Terminal Shares, 8 Cir., 89 F.2d 652, 655. A jury may decide incorrectly issues of fact, but if its verdict is within the evidence its mistakes of fact cannot be corrected on review. Elzig v. Gudwangen, 8 Cir., 91 F.2d 434, 444. And the determination by a legislative body of a debatable question which it has power to decide is not subject to judicial reexamination. United States v. Carolene Products Co., 304 U.S. 144, 154, 58 S.Ct. 778, 82 L. Ed. 1234. The determination of certain matters was, under the National Labor Relations Act, entrusted by Congress to the National Labor Relations Board alone, and the courts were denied power to substitute their judgments with respect to such matters for those of the Board. National Labor Relations Board v. Waterman Steamship Co., 309 U.S. 206, 226, 60 S.Ct. 493, 84 L.Ed. 704. "A controversy like this always calls for fresh reminder that courts must not substitute their notions of expediency and fairness for those which have guided the agencies to whom the formulation and execution of policy have been entrusted." Railroad Commission of Texas v. Rowan & Nichols Oil Co., 60 S.Ct. 1021, 1024, 84 L.Ed. 1368. See, also, National Labor Relations Board v. Bradford Dyeing Ass'n, 60 S.Ct. 918, 930, 84 L. Ed. 1226.

 One of the matters entrusted solely to the Board is the determination of the appropriate unit for the purposes of collective bargaining. Section 9(b) of the Act [§ 159(b), Tit. 29, U.S.C., 29 U.S.C.A. § 159(b)] provides: "The Board shall decide in each case whether, in order to insure to employees the full benefit of their right to self-organization and to collective bargaining, and otherwise to effectuate the policies of this chapter, the unit appropriate for the purposes of collective bargaining shall be the employer unit, craft unit, plant unit, or subdivision thereof." This obviously gives to the Board a wide—though not an absolute—discretion in the selection of the appropriate bargaining unit. The decision of the Board is conclusive unless arbitrary or capricious. National Labor Relations Board v. Lund, 8 Cir., 103 F.2d 815, 819; International Ass'n, etc., v. National Labor Relations Board, App.D.C., 110 F.2d 29, 46; Bussmann Mfg. Co. v. National Labor Relations Board, 8 Cir., 111 F.2d 783, 785.

 If the facts before the Board were such that all reasonable minds must honestly draw the same conclusion from them with respect to what would constitute an appropriate bargaining unit, that question would become a question of law, rather than one of fact. In such a situation, a wrong determination of the question by the Board would be subject to reversal as being purely arbitrary. That, we think, is not the situation here presented. The Board was required to select the unit which in its judgment would best serve the public policy declared in the Act. The public interest, as well as that of the various groups of employees of the Company, was to be considered, and the question as to what bargaining unit would best effectuate the purposes of the Act and prevent obstructions to interstate commerce by encouraging collective bargaining and protecting its exercise (National Licorice Co. v. National Labor Relations Board, 309 U.S. 350, 362, 60 S.Ct. 569, 576, 84 L.Ed. 799) was a debatable question to be determined by the Board. See and compare National Labor Relations Board v. Carlisle Lumber Co., 9 Cir., 99 F.2d 533, 537.

 It cannot truthfully be said that the employees in the unit selected by the Board are not subject to common centralized control, that there is no similarity or interrelation of the work which all of them do, that the wages and hours and working conditions are substantially different, that the products which they make at the different plants vary in essential particulars, or that

one representative for all of the employees could not bargain for them as effectively or successfully as could one representative for a part of them and another representative for another part. It seems unfortunate that the employees at the Crystal City plant should be forced to accept a representative, for collective bargaining, not of their own choosing, but that situation is not an unusual one with minorities. The fact that it was the wish of the vast majority of the employees at the Crystal City plant to have that plant treated as a separate unit for purposes of collective bargaining was presented to the Board and was considered by it. There is nothing in the history of the collective bargaining between the Company and its employees which, in our judgment, would, as a matter of law, preclude the Board from determining that the production and maintenance employees at the six flat glass plants were an appropriate bargaining unit. Our conclusion is that the decision of the Board was not arbitrary or invalid.

■ The contention that § 9(b) of the Act is unconstitutional, we regard as without merit. The validity of the Act as an entirety has been sustained. National Labor Relations Board v. Friedman-Marks Clothing Co., 301 U.S. 58, 57 S.Ct. 645, 630, 81 L.Ed. 921, 108 A.L.R. 1352; National Labor Relations Board v. Jones & Laughlin Steel Corp., 301 U.S. 1, 57 S.Ct. 615, 81 L.Ed. 893, 108 A.L.R. 1352. There is no substantial basis for believing that such a vital part of the Act as § 9(b) could now be successfully challenged or invalidated as an unlawful delegation of legislative power.

The petitioners complain of the refusal of the Board to admit evidence as to the wishes of the employees at the Crystal City plant with respect to representation. It appears that the Board had before it a petition showing that 1300 of the employees at that plant desired that it be designated as an appropriate unit for collective bargaining. It also appears that in June, 1938, the Federation had filed a complaint with the Board charging that the Company had dominated and supported the formation and administration of the Crystal City Glass Workers' Union which represented a vast majority of the employees at the Crystal City Plant; that the Board had charged the Company with an unfair labor practice in that regard, and that at a hearing before the Board—at which the Crystal City Union did not appear—an order was entered by the Board, pursuant to a stipulation of the Company, the Federation and the Board, that the Company cease and desist "from recognizing or dealing with the Crystal City Glass Workers' Union as a labor organization, or any person or group of persons purporting to represent said organization." This Court entered a decree providing for the enforcement of this order. 8 Cir., 102 F. 2d 1004. In subsequent proceedings before the Board, dealing with the question of representation, the Crystal City Union and the Company offered evidence to prove that 1500 of 1800 employees at the Crystal City plant desired to be treated as a unit for purposes of collective bargaining and desired to be represented by the Crystal City Union, and that that union had not been, and was not, dominated or supported by the Company. It was contended that, since the Union had not been a party to the proceeding which resulted in the order compelling the Company to withdraw recognition from the Union, it was not bound by such order. The trial examiner excluded the evidence. The Board, in its decision and order under review, considered the rulings of the examiner and stated that, even if the facts which the petitioners offered to prove were accepted as true, the Board would not alter its determination as to what constituted the appropriate unit for collective bargaining, and that therefore the petitioners had not been prejudiced by the rulings of the trial examiner.

■■ While we think that the practice followed by a trial examiner in taking evidence and ruling upon objections thereto should be that which applies to special masters in equity proceedings (see Garden City Feeder Co. v. Commissioner of Internal revenue, 8 Cir., 75 F.2d 804, 807 and cases cited), rather than that which prevails in courts of law when a jury is present, and that the record should contain all evidence offered by any party in interest, except such as is palpably incompetent, we are unable to see how a remand of this controversy for the taking of the rejected testimony would be warranted under the circumstances or would amount to anything more than a postponement of the inevitable. The evidence which was before the Board adequately disclosed that the Federation did not represent, and had never represented, a majority of the employees at the

Crystal City plant, and that it was the wish of a vast majority of those employees that they be treated, for bargaining purposes, as a separate unit and be permitted to select their own representative. The Company, because of the cease and desist order of the Board, was precluded from recognizing the Crystal City Union as the representative of its employees at Crystal City. There is nothing in the record which would justify a conclusion that the stipulation of the Company, pursuant to which that order of the Board was entered, constituted any breach of faith by the Company with its employees at Crystal City or was intended to defeat their rights to organize and bargain collectively. Under the circumstances, we think that the exclusion of evidence, of which the Company and the Crystal City Union complain, was not a denial of due process nor prejudicial error requiring a reversal of the order of the Board. For the same reasons, we think that the motions of the petitioners to be permitted to adduce additional evidence before the Board to prove what the rejected evidence would have proved, should be denied.

Our conclusion is that the order of the Board, reversal of which is sought, is a valid order. The request of the Board for the enforcement of the order is granted.