**DONNELLY GARMENT CO. v. NATIONAL LABOR RELATIONS BOARD (DONNELLY GARMENT WORKERS' UNION et al., Interveners).**

**No. 475.**

Circuit Court of Appeals, Eighth Circuit.

Nov. 6, 1941.

Rehearing Denied Jan. 6, 1942.

---

James A. Reed and Robert J. Ingraham, both of Kansas City, Mo. (Burr S. Stottle and James J. Shepard, Jr., both of Kansas City, Mo., on the brief), for petitioner.

Frank E. Tyler, of Kansas City, Mo. (Lucian Lane, of Kansas City, Mo., on the brief), for intervener-petitioner.

Ruth Weyand, of Washington, D. C., Atty., National Labor Relations Board (Robert B. Watts, General Counsel, National Labor Relations Board, Laurence A. Knapp, Associate General Counsel, National Labor Relations Board, Ernest A. Gross, Asst. General Counsel, National Labor Relations Board, and Mortimer B. Wolf and Joseph B. Robison, all of Washington, D. C., Attys., National Labor Relations Board, on the brief), for respondent.

Clif Langsdale, of Kansas City, Mo., for intervener-respondent.

Before GARDNER, SANBORN, and THOMAS, Circuit Judges.

SANBORN, Circuit Judge.

The order of the National Labor Relations Board of March 6, 1940, which the petitioners seek to have set aside and the Board asks to have enforced, requires that the Donnelly Garment Company, of Kansas City, Missouri (hereinafter called the Company), a large manufacturer of women's dresses, engaged in interstate commerce, cease and desist from: (a) dominating or interfering with the administration of Donnelly Garment Workers' Union (an independent labor organization of the Company's employees) or with the formation and administration of any other labor organization of its employees or giving support thereto; (b) giving effect to its contracts with Donnelly Garment Workers' Union; (c) discouraging membership in International Ladies' Garment Workers' Union (an affiliated labor organization, hereinafter referred to as the International) or discouraging or encouraging membership in any labor organization of the Company's employees; (d) dominating, controlling and using the Donnelly Loyalty League (another organization of the Company's employees) to interfere with, restrain and coerce the employees of the Company in the exercise of the rights guaranteed them by the National Labor Relations Act, 29 U.S.C.A. § 151 et seq.; (e) interfering with, restraining or coercing the employees in the exercise of their rights of self-organization and collective bargaining. The order further requires the Company to take the following affirmative action: (a) withdraw all recognition from, and disestablish, the Donnelly Garment Workers' Union as the representative of any of the Company's employees; (b) reimburse all employees who are members of this union for dues deducted from their wages and paid by the Company to the union; (c) offer to May Fike (a former employee found by the Board to have been discriminatorily discharged) reinstatement; (d) compensate May Fike for her loss of wages; (e) post notices of compliance.

The proceedings before the Board which terminated in the order complained of by the petitioners were initiated by the International by the filing of charges with the Board against the Company. Upon these charges the Board in April, 1939, filed a complaint and an amended complaint alleging that the Company had, on or about April 27, 1937, and thereafter, dominated, interfered with, and supported the Donnelly Garment Workers' Union, (a) by permitting the Company's supervisory and other employees to promote that organization on the time and premises and at the expense of the Company; (b) by forming, on or about February 12, 1935, through its officers and agents, the Donnelly Loyalty League and using it until on or about April 27, 1937, for the purpose of impeding and preventing the organization of the employees of the Company by the International; and (c) by entering into a closed shop contract with the Donnelly Garment Workers' Union for the purpose of assisting that union and of depriving the Company's employees of their rights with respect to self-organization and collective bargaining. The complaint alleged that the Company had discharged Sylvia Hull and May Fike in April, 1937, because they had joined and assisted the International. The complaint also alleged that the Company had by various acts coerced and restrained its employees from becoming or remaining members of the International; that the Company had encouraged and compelled membership in the Donnelly Garment Workers' Union; and that, by entering into a closed shop contract with that union, the Company had violated Section 8(1) and (3) of the National Labor Relations Act, and that the contract was void.

The Company, in its answer, (a) challenged the jurisdiction of the Board; (b) alleged that the International was engaged in an unlawful conspiracy to compel the Company to force its employees, against their will and in violation of the National Labor Relations Act, to join the International, and that, in furtherance of the conspiracy, the Board and its representatives were aiding and assisting the International and were prejudiced against the Company and were partisans of the International; (c) petitioned for an investigation and certification of representatives of its employees for purposes of collective bargaining; (d) denied that the Company had committed any unfair labor practice, and alleged that the International and its representatives were engaged in the unlawful conspiracy referred to.

The Donnelly Garment Workers' Union intervened, asserting its freedom from employer influence, domination and support. It asked that the Board hold an election to demonstrate the choice of the employees of the Company of a representative for purposes of collective bargaining.

A hearing was had before a Trial Examiner appointed by the Board. The Trial Examiner confined the issues to the charges that the Company had dominated, interfered with and supported the formation and administration of the Donnelly Garment Workers' Union, that the Company had discriminatorily discharged two employees, and that it had interfered with the rights of its employees to organize and to choose representatives for collective bargaining. The Examiner, in his intermediate report, found that the Company had engaged in unfair labor practices under Section 8(1), (2) and (3) and Section 2(6) and (7) of the Act. He found that May Fike had not been discriminatorily discharged; and found that Sylvia Hull had been excluded from the plant of the Company because of union activities, but was not discriminatorily discharged and was not entitled to back pay. He recommended that the Company be ordered to cease and desist from the unfair labor practices which he found that it had been engaged in, and that it be required to withdraw all recognition from, and to disestablish, the Donnelly Garment Workers' Union, and to treat as void its agreements with that union. After hearing exceptions to the report of the Examiner, the Board approved his rulings with respect to the issues and the evidence and reached the same conclusions which he had reached, except that it determined that May Fike had been discriminatorily discharged and was entitled to be compensated for her loss of wages.

The petitioners challenge the validity of the Board's order on two grounds: (1) lack of due process; and (2) lack of a sufficient evidentiary basis for the Board's findings, conclusions and order.

With respect to due process, the petitioners first contend that they were not accorded a fair hearing before an impartial tribunal because the Trial Examiner, the Board, and its representatives were at all times prejudiced and biased against them and were assisting and colluding with the International to force the employees of the Company to join the International. The petitioners argue that this alleged bias and prejudice of the Board and its representatives sufficiently appears from an examination of the proceedings before the Examiner and the Board and from the comments and rulings of the Examiner and from the rulings of the Board, and that its order is therefore invalid.

We think that it cannot be said that it appears from the record of the proceedings before the Examiner and before the Board that there was a denial of due process because of bias and prejudice or collusion. If, as petitioners contend, the Trial Examiner and the Board ruled erroneously with respect to the issues to be tried or in the exclusion of evidence and drew unwarranted inferences from the evidence adduced, that would not justify a conclusion that either the Examiner or the Board was prejudiced or deliberately unfair. That the Examiner made comments which might better have been omitted, with respect to the attitude of the petitioners' witnesses or the character of their testimony, is not enough to show a denial of due process. Compare Cupples Co. Manufacturers v. National Labor Relations Board, 8 Cir., 106 F.2d 100, 113; Goldstein v. United States, 8 Cir., 63 F.2d 609, 612-614.

The petitioners next contend that this Court may and should reconsider and grant their applications for leave to adduce additional evidence to show a denial of due process because of bias and prejudice on the part of the Board and its subordinates.

After the petitioners had filed in this Court their petitions for a review of the Board's order, and before the final submission of such petitions, they filed applications for leave to adduce, either before the Board or before this Court, additional evidence to show that they had been denied a fair and full hearing before an impartial tribunal, that the members and subordinates of the Board were improperly influenced by officers and representatives of the International, that the decision and order of the Board did not represent its judgment based upon the evidence, and that its members and subordinates were assisting the International in its unlawful conspiracy to compel the Company to force its employees to join the International against their will. The Company in its application set out certain letters and documents which it asserted were from the files of the National Labor Relations Board and were introduced in evidence before a special committee of the House of Representatives engaged in investigating the Board. It is not necessary to set out or describe these letters and documents in

this opinion. The petitioners contended that the showing made substantiated their assertions that the Board and its representatives were not impartial and were in collusion with the International. The applications also contained requests that the petitioners be permitted to adduce before the Board evidence going to the merits of the controversy which had been excluded by the Examiner and which they contended was competent and material.

The applications of the petitioners for leave to adduce additional evidence were heard by this Court on October 4, 1940, and were resisted by the Board. A majority of the Court which heard the applications regarded the showing made by the petitioners as to the alleged bias and collusion of the Board to be insufficient to invoke any action by the Court, and the applications were in that regard denied. The applications to adduce before the Board the evidence going to the merits of the controversy which the petitioners claim was wrongfully excluded by the Trial Examiner and the Board were also denied, but without prejudice to their being renewed at the time the case was finally submitted to this Court. The Board contends that the applications of the petitioners to adduce additional evidence relating to alleged lack of due process for alleged bias and collusion were finally ruled upon by this Court at the time they were denied and that the petitioners are foreclosed from having them reconsidered, and that, in any event, the record, together with the showing contained in the applications, is insufficient either to require or to justify an inquiry by this Court relative to the alleged bias, prejudice or collusion on the part of the Board.

■■ We do not doubt the power of this Court, upon a proper application, to conduct an inquiry for the purpose of ascertaining whether the National Labor Relations Board, or any other administrative agency the orders of which are subject to review by this Court, has accorded to an aggrieved party the full and fair hearing to which he was entitled as a matter of constitutional right. See Morgan v. United States, 298 U.S. 468, 477, 56 S.Ct. 906, 80 L.Ed. 1288; Morgan v. United States, 304 U.S. 1, 19, 20, 58 S.Ct. 773, 82 L.Ed. 1129; Cupples Co. Manufacturers v. National Relations Board, 8 Cir., 103 F.2d 953, 955, 956. All questions touching the regularity and validity of proceedings before such an agency are subject to review. Morgan v. United States, 298 U.S. 468, 477, 56 S.Ct. 906, 80 L.Ed. 1288; National Labor Relations Board v. Jones & Laughlin Steel Corporation, 301 U.S. 1, 46, 47, 57 S.Ct. 615, 81 L.Ed. 893, 108 A.L.R. 1352; Myers v. Bethlehem Shipbuilding Corporation, 303 U.S. 41, 49, 58 S.Ct. 459, 82 L.Ed. 638.

■■ In considering this phase of the case, we are not so much concerned with the question of judicial power as with the question of judicial propriety. The judges who constitute the Court to which this case was finally submitted are not the same judges who originally passed upon the sufficiency of the petitioners' applications for leave to adduce additional evidence and who denied those applications. It may be true, as the petitioners contend, that the judges to whom the case was finally submitted, who have before them the complete record and all of the briefs, who have had the benefit of extended oral argument, and who have the ultimate responsibility of deciding whether the order of the Board is entitled to enforcement, are in a better position to rule upon the sufficiency of the petitioners' applications for leave to show that they were denied a fair hearing before an impartial tribunal than were the judges who constituted the Court which heard and denied the applications in the fall of 1940. The fact remains, however, that the petitioners submitted their applications to this Court in the fall of 1940, and that the judges who then constituted the Court ruled that the petitioners' applications were insufficient to invoke an inquiry as to alleged bias, prejudice and collusion on the part of the Board and its representatives. If we should now rule that the applications were sufficient and grant them, we could not avoid the charge that we were reversing or overruling an order made by another group of judges of this same Court. It is a long-established rule that judges of the same court will not knowingly review, reverse or overrule each other's decisions. Shreve v. Cheesman, 8 Cir., 69 F. 785, 790, 791; Plattner Implement Co. v. International Harvester Co., 8 Cir., 133 F. 376, 378, 379. The necessity of such a rule in the interest of an orderly administration of justice is clear. We have concluded, after careful consideration, that if this Court has erred in denying the petitioners an opportunity to prove that the Board was not an impartial tribunal, the error is one which

properly can be corrected only by the Supreme Court of the United States on certiorari.

The next question for consideration is whether there was a denial of due process because of the rejection by the Trial Examiner of evidence offered by the petitioners which was competent, relevant and material. We have already shown in general what the issues were. The main and controlling issue in the case was whether the formation or administration of the Donnelly Garment Workers' Union had been supported, dominated or interfered with by the Company or whether that union was a bona fide independent labor organization formed and administered exclusively by the employees of the Company and completely free from employer influence, domination and support.

What the Board attempted to show by its evidence, and what it claims that it did show, was that the Company had, since 1934, persistently resisted attempts by the International to unionize the employees of the Company and that the Company was at all times hostile to the International; that in 1935 the Company assisted or influenced its employees to organize the Donnelly Loyalty League; that the League was supported and dominated by the Company and was formed for the purpose of resisting unionization of the employees of the Company by the International; that in the spring of 1937, at a time when the International was engaged in an organizational campaign in Kansas City directed against the employees of the Company and the employees of other garment companies, the Donnelly Company influenced its employees to form the Donnelly Garment Workers' Union to resist the efforts of the International to induce them to join it; that the President of the Company, shortly before the Donnelly Garment Workers' Union was organized, addressed a mass meeting of the employees and expressed antagonism toward the International; that the Donnelly Garment Workers' Union was promoted and administered by supervisory employees of the Company on Company time and premises and at Company expense; that the Company forced or encouraged all of its employees to join the Donnelly Garment Workers' Union and discouraged them from joining the International; and that the Company's recognition of the Donnelly Garment Workers' Union and entering into an agreement for a closed shop with

that union was to prevent the employees from joining the International.

What the Company in the hearing before the Examiner attempted to show by its evidence was that it had not done the things that the Board charged it with doing; that it had recognized, and had accorded to its employees, the rights, guaranteed them by law, freely to organize and to choose representatives for collective bargaining; that the Donnelly Loyalty League was purely a social organization; that the organization of the Donnelly Garment Workers' Union was not an outgrowth of the Loyalty League; that the union was an independent labor organization formed by the employees themselves without any suggestion, interference or assistance from the Company; that the speech made by the President of the Company to a mass meeting of the employees, shortly before this organization was formed, amounted, in substance, to nothing more than a statement that the Company would never compel its employees to join the International or to join any other labor organization against their will; that the employees formed the Donnelly Garment Workers' Union for their own protection in the face of threats by the International to use forceful and unlawful means to compel them to join the International and to compel the Company to force them to join that union; that the Company recognized the Donnelly Garment Workers' Union as the exclusive representative of its employees for purposes of collective bargaining and entered into agreements with it on their behalf, not for the purpose of discouraging their joining the International, but because the Donnelly Garment Workers' Union represented all of the Company's employees and the Company was required by law to recognize that union and to deal with it as the exclusive representative of the employees of the Company.

The petitioner Donnelly Garment Workers' Union, in the hearing before the Examiner, attempted to prove that it was an independent labor organization of all the employees of the Donnelly Company; that the union was organized by and for such employees and was under their exclusive domination and control, and that it at all times had been free from employer domination, interference and support; that the employees believed and had reasonable grounds to believe that the International was resorting to force, violence and threats

to compel other employees in other garment plants in Kansas City to join the International and to force their employers to compel them to join it, and was about to attempt to force the employees of the Donnelly Company by the same methods to join the International, and that one of the motives which prompted them to form the Donnelly Garment Workers' Union was self-protection.

At the hearing before the Trial Examiner, the petitioners proffered the evidence of the employees of the Donnelly Company, some 1200 in number, to show how and why they formed the Donnelly Garment Workers' Union, to show that no influence was brought to bear upon them by the employer either in the formation or administration of the union, to show what the President of the Company had said to them at the mass meeting in the spring of 1937, to show that their freedom to organize and to choose their own representatives for the purposes of collective bargaining had not been interfered with by their employer, and to show that their union, both in its formation and administration, was exclusively controlled and supported by them. The Trial Examiner refused to receive this evidence. He permitted the petitioners to make formal offers of proof.

The Trial Examiner seems to have confused the admissibility of this proffered testimony with his estimate of its weight and sufficiency and of the probable credibility of the witnesses who were to be called upon to give it. In his rulings he referred to the presence of the officers of the Company at the hearing, and apparently he was of the opinion that if the Board's evidence was sufficient to justify a finding that the Donnelly Garment Workers' Union was fostered, supported or dominated by the Company, that would render the proffered testimony inadmissible.

This was not a case where domination and support by an employer of an independent union was conceded or where the independent union was conclusively shown to be of a character which could not, in any event, act as the bargaining representative of its members. The evidence of the Board which tended to show domination and support of the independent union by the Company was circumstantial.

■ It was not shown that any of the employees of the Donnelly Company whose testimony was offered was under any disqualifying disability. There was no presumption that these employees would commit perjury, and, even if the Trial Examiner believed that they would perjure themselves, that would not have affected the admissibility of their evidence. It is elementary that there is a distinction between the admissibility of evidence and its weight or sufficiency. National Labor Relations Board v. Bell Oil & Gas Co., 5 Cir., 98 F. 2d 870, 871. Surely if the testimony of an employee which tends to prove that an employer interfered with or supported the organization of an independent union is admissible, the testimony of an employee which tends to disprove domination and support of such a union by an employer is equally admissible. Evidence is relevant if it tends either to prove or to disprove any issue in a case. We do not say that the Trial Examiner was required to take the same testimony from 1200 witnesses. There were available to him well-known expedients for limiting the number of witnesses where their testimony was cumulative.

■ We have no doubt that the testimony offered by the petitioners in their efforts to prove that the employees of the Donnelly Company formed the Donnelly Garment Workers' Union of their own free will and that the formation and administration of that union was free from employer influence, domination and support, and to explain how and why they came to organize the union, was competent, relevant and material and should have been received. The individuals who form an unincorporated association certainly should know what sort of an organization it is, how it happened to be formed, who influenced its formation, and who controls it. We think there can be no doubt of the right of the members of such an organization to testify to such matters, and that their evidence is admissible regardless of its weight.

That evidence of employees such as was offered in this case has ordinarily been regarded as admissible on the issue of employer domination and support and has been received and considered, is indicated in many cases. In Humble Oil & Refining Co. v. National Labor Relations Board, 5 Cir., 113 F.2d 85, 91, it was said of such testimony: "If human testimony can establish anything it establishes that Humble did not dominate or interfere with the organization of either Federation." See, also, National Labor Relations Board v.

Brown Paper Mills Co., Inc., 5 Cir., 108 F.2d 867, 871; National Labor Relations Board v. Skinner & Kennedy Stationery Co., 8 Cir., 113 F.2d 667, 670; Foote Bros. Gear & Mach. Corp. v. National Labor Relations Board, 7 Cir., 114 F.2d 611, 622, 623; National Labor Relations Board v. Automotive Maintenance Machinery Co., 7 Cir., 116 F.2d 350, 355, 356; American Enka Corporation v. National Labor Relations Board, 4 Cir., 119 F.2d 60, 63; National Labor Relations Board v. Sparks-Withington Co., 6 Cir., 119 F.2d 78, 82; National Labor Relations Board v. Moore-Lowry Flour Mills Co., 10 Cir., 122 F.2d 419, 429. Compare Bethlehem Steel Co. v. National Labor Relations Board, App.D.C., 120 F. 2d 641, 653, but see the dissenting opinion in that case by Judge Stephens on pages 662 and 663.

In its brief, the Board says: "In Pittsburgh Plate Glass Co. v. National Labor Relations Board [8 Cir.], 113 F.2d 698, 703, this Court ruled, on a contention identical with that advanced by petitioner here, that 'under the circumstances, we think that the exclusion of evidence * * * was not a denial of due process nor prejudicial error requiring a reversal of the order of the Board.' In affirming the decree of this Court, the Supreme Court expressed full agreement with this view, holding that 'the Board might properly say as it did that accepting the offers of proof it would not alter the determination * * *.' Pittsburgh Plate Glass Co. v. National Labor Relations Board, decided April 28, 1941 [313 U.S. 146, 163, 61 S.Ct. 908, 917, 85 L. Ed. 1251]."

We cannot agree with this statement of the Board. The issue in the Pittsburgh Plate Glass Co. case was whether all of the employees of an employer constituted an appropriate unit for purposes of collective bargaining or whether the employees at one of the employer's plants known as the Crystal City plant were entitled to be treated as a separate unit for such purposes. The evidence offered and rejected in that case bore upon the wishes of the employees at the Crystal City plant to be a separate unit and upon the existence at that plant of an independent union capable of representing such employees. The Board had before it, as we thought, all of the facts essential to a determination of the specific issue presented. It had knowledge that a vast majority of the employees at the Crystal City plant were opposed to being included with the employees of the other plants for the purposes of collective bargaining. The Board had apparently eliminated as a factor for determining the question of what constituted an appropriate unit the wishes of the employees at the Crystal City plant and the existence of the independent union at that plant. It seemed to us, in view of the evidence which the Board had before it and the criteria which it considered of consequence in deciding the issue presented, that, although the proffered evidence should have been received, it could not be said that the failure to receive it amounted to a denial of due process. We did not rule in that case that the evidence of members of an independent union as to why, how, and under what circumstances they formed the union, and which tended to prove whether the union was or was not supported and dominated by their employer, was incompetent or immaterial where the issue was whether the union was dominated and supported by the employer. The judgment of this Court in the Pittsburgh Plate Glass Co. case was affirmed by a divided Court (313 U.S. 146, 61 S.Ct. 908, 85 L.Ed. 1251). The majority of the Supreme Court were of the opinion that the rejected evidence was of so little materiality under the peculiar circumstances of that case that the Board was not required to receive it, and that its failure to receive it did not amount to a denial of due process. Mr. Justice Stone wrote a strong dissenting opinion, in which the Chief Justice and Mr. Justice Roberts concurred, to the effect that the evidence rejected was material and competent, that it should have been received, and that its exclusion by the Examiner and the Board constituted a denial of due process. It is obvious that there was no difference of opinion as to the existence of the constitutional requirement that an administrative agency must receive and consider evidence which is competent and material. The problem considered in that case was whether the evidence rejected by the Board was competent and material. This Court thought the evidence was not material, and a majority of the Supreme Court were of the same opinion.

 The attitude of this Court toward the conduct of hearings by a trial examiner, we think, has been entirely consistent. In Cupples Co. Manufacturers v. National Labor Relations Board, 8 Cir., 106 F.2d 100, 113, we made the suggestion

that if a trial examiner would, "within reasonable limits, permit each of the parties to the proceeding before him to prove his own case, in his own way, by his own counsel," charges of lack of due process for failure to accord a full and fair hearing could readily be avoided. In Pittsburgh Plate Glass Co. v. National Labor Relations Board, supra, 113 F.2d 698, 702, we expressed the opinion that the practice which should be followed by a trial examiner in taking evidence and ruling upon objections to evidence is that which applies to special masters in equity proceedings, and "that the record should contain all evidence offered by any party in interest, except such as is palpably incompetent * *." We think that experience has demonstrated that in a trial or hearing where no jury is present, more time is ordinarily lost in listening to arguments as to the admissibility of evidence and in considering offers of proof than would be consumed in taking the evidence proffered, and that, even if the trier of facts, by making close rulings upon the admissibility of evidence, does save himself some time, that saving will be more than offset by the time consumed by the reviewing court in considering the propriety of his rulings and by the consequent delay in the final determination of the controversy. One who is capable of ruling accurately upon the admissibility of evidence is equally capable of sifting it accurately after it has been received, and, since he will base his findings upon the evidence which he regards as competent, material and convincing, he cannot be injured by the presence in the record of testimony which he does not consider competent or material. Lawyers and judges frequently differ as to the admissibility of evidence, and it occasionally happens that a reviewing court regards as admissible evidence which was rejected by the judge, special master, or trial examiner. If the record on review contains not only all evidence which was clearly admissible, but also all evidence of doubtful admissibility, the court which is called upon to review the case can usually make an end of it, whereas if evidence was excluded which that court regards as having been admissible, a new trial or rehearing cannot be avoided. We say this in the hope of preventing a repetition of what occurred in the case now before us, and to obviate any misunderstanding as to what the attitude of this Court is with respect to the taking of evidence in a hearing before a special master or a trial examiner.

That a refusal by an administrative agency such as the National Labor Relations Board to receive and consider competent and material evidence offered by a party to a proceeding before it, amounts to a denial of due process is not open to debate. See St. Joseph Stock Yards Co. v. United States, 298 U.S. 38, 73, 56 S.Ct. 720, 80 L.Ed. 1033; Ohio Bell Telephone Co. v. Public Utilities Commission, 301 U. S. 292, 304-305, 57 S.Ct. 724, 81 L.Ed. 1093; Railroad Commission v. Pacific Gas & Electric Co., 302 U.S. 388, 393, 58 S.Ct. 334, 82 L.Ed. 319; Morgan v. United States, 304 U.S. 1, 14, 15, 58 S.Ct. 773, 999, 82 L.Ed. 1129. As Mr. Justice Stone said in his dissenting opinion in Pittsburgh Plate Glass Co. v. National Labor Relations Board, 313 U.S. 146, 177, 61 S.Ct. 908, 923, 85 L.Ed. 1251, "One of the most important safeguards of the rights of litigants and the minimal constitutional requirement, in proceedings before an administrative agency vested with discretion is that it cannot rightly exclude from consideration, facts and circumstances relevant to its inquiry which upon due consideration may be of persuasive weight in the exercise of its discretion. Interstate Commerce Commission v. Chicago, R. I. & P. Ry. Co., 218 U.S. 88, 102, 30 S.Ct. 651, 656, 54 L.Ed. 946; St. Joseph Stock Yards Co. v. United States, 298 U.S. 38, 75, 78, 56 S.Ct. 720, 736, 737, 80 L.Ed. 1033; Ohio Bell Telephone Co. v. [Public Util.] Commission, 301 U.S. 292, 304, 305, 57 S.Ct. 724, 730, 81 L.Ed. 1093"; and there can be no compromise of this requirement on "the footing of convenience or expediency, or because of the natural desire to be rid of harassing delay." Ohio Bell Telephone Co. v. Public Utilities Commission, 301 U.S. 292, 305, 57 S.Ct. 724, 731, 81 L.Ed. 1093. That the Board would or might have reached no different conclusion had the rejected evidence been received, is entirely beside the point. The truth is that a controversy tried before a court or before an administrative agency is not ripe for decision until all competent and material evidence proffered by the parties has been received and considered. See National Labor Relations Board v. Thompson Products, Inc., 6 Cir., 97 F.2d 13, 15; Foote Bros. Gear & Mach. Corp. v. National Labor Relations Board, 7 Cir., 114 F.2d 611, 621.

■ We are of the opinion that the Trial Examiner did not err in confining the issues to those which were tendered by the complaint filed by the Board. We are satisfied that the Board was not required to try the International for alleged conspiracy nor to try the charge that the Board had conspired or colluded with the International.

■ Our conclusion is that the petition of the Board for enforcement of the order under review must be denied. We think that the least that the Board can do, in order to cure the defects in its procedure caused by the failure of the Trial Examiner to receive admissible evidence, is to vacate the order and the findings and conclusions upon which it is based; to accord to the petitioners an opportunity to introduce all of the competent and material evidence which was rejected by the Trial Examiner; and to receive and consider such evidence together with all other competent and material evidence in the record before making new findings and a new order.

■ Because of lack of due process in the proceedings before the Board, the question of the sufficiency of the evidence to support the findings and order will not be considered.

The petition of the Board for the enforcement of its order is denied, and the case is remanded to the Board for further proceedings.