**CHESAPEAKE MOTOR LINES, Inc.,**
Plaintiff,

v.

**UNITED STATES** of America and Interstate Commerce Commission,
Defendants.

Civ. A. No. 9319.

United States District Court
D. Maryland, Civil Division.

Aug. 23, 1957.

Francis D. Murnagham, Jr. and H. Vernon Eney, Baltimore, Md., Venable, Baetjer & Howard, Baltimore, Md., Dale C. Dillon, Washington, D. C., Todd, Dillon & Singer, Washington, D. C., for plaintiff.

Walter E. Black, Jr., Baltimore, Md., Victor R. Hansen, James E. Kilday, Colin A. Smith, Washington, D. C., for defendant United States of America.

Carroll T. Prince, Jr., Washington, D. C., for defendant Interstate Commerce Commission.

Before SOBELOFF, Circuit Judge, and THOMSEN and WATKINS, District Judges.

SOBELOFF, Circuit Judge.

This court of three judges was convened to hear the complaint filed by Chesapeake Motor Lines, Inc., to annul and enjoin enforcement of an order of the Interstate Commerce Commission, dated November 7, 1955. (Docket No. MC–52917, Sub. No. 11.) Title 28 U.S.C.A. §§ 1336, 2284, 2325.

The plaintiff presently holds Certificate No. MC–52917, which authorizes it to transport by truck, as a common carrier over irregular routes, general commodities, with certain exceptions, from Baltimore to New York City and certain nearby points in New Jersey. With the consent of the I.C.C., it also acquired another trucker's authority to carry cheese, processed meats and frozen foods from New York City to Baltimore and Washington, D. C. (MC–F–5250, 59 M.C.C. 383, decided July 3, 1953.)

For a time Chesapeake transported fresh meat southbound from New York City to Baltimore and Washington, relying upon its authority to transport processed meats in that direction. In the early part of 1954, however, a representative of the Commission's Bureau of Motor Carriers, acting on an informal complaint of a competitor of the plaintiff, raised a question as to whether or not fresh meat could properly be transported under that authority. Chesapeake thereupon applied to the Commission on May 12, 1954, for a certificate of public convenience and necessity to carry "meats, meat products and meat by-products," and dairy products over irregular routes from New York and points in New Jersey to Baltimore. The classification "meat, meat products and meat by-products" came into existence in 1952 following a general proceeding designed to clarify the terms used in future applications for operating authority and to avoid the ambiguities found to exist in some of the older proceedings. Descriptions in Motor Carrier Certificates, 61 M.C.C. 209. Admittedly the classification Chesapeake sought is broad enough to include fresh meat under the commodity lists promulgated by the Commission. At the hearing in the present case Chesapeake voiced the contention that its existing certificate for processed meats included fresh meats, and that it was entitled to a ruling so interpreting and clarifying its authorization. In form, however, its application sought a new certificate which, it says, was desired only as an alternative if the Commission disagreed with the complainant's interpretation of the existing certificate.

The examiner to whom the application was referred concluded that the right to transport "processed meats" does not include the movement of fresh meats, but he recommended the grant of the application for a new certificate to transport meat, meat products, and meat by-products (as well as dairy products), from New York City and certain New Jersey points to Baltimore.

While agreeing with the examiner that "processed meats" does not include fresh meats, the Commission declined to follow his recommendation for the grant of a new certificate, on the ground that the applicant had not made proper showing of public convenience and necessity. This decision, made by a vote of two to one in Division 1 of the Commission, was later adopted by the Commission as a whole.

Government counsel contend that the issue in regard to the true meaning of the existing certificate was not properly raised below, and hence is not before us. They say that the proceeding was not one for clarification of that certificate, but for the grant of a new one. The Government's brief declares, "The Commission found that the plaintiff failed to establish public convenience and necessity, and, accordingly, issued an order doing nothing more than denying the application. That is the sole issue determined in the Commission's order, and, of course, the only matter under review here."

This, we think, takes too narrow a view of the issues raised, argued, and decided. The examiner considered and expressed his opinion upon the meaning of the term "processed meats" in the existing certificate. The Commission too did not treat the case as one strictly limited to an application for new authority, for while it did not discuss the question at length it did hold that the term "processed meats" does not include "fresh". It was obvious to the administrative officials, as it is to us, that if the old certificate were interpreted in favor of Chesapeake, it would become unnecessary to deal with the new application. Chesapeake's application could not be considered in isolation when there was an outstanding ambiguous certificate which could have covered the same subject matter. The interpretation to be given the term "processed" was therefore necessarily before the Commission. The issue goes to the heart of the case and should not now be sidetracked upon a technical point of pleading.

The question is before us, but the difficulty as we approach our task is that neither the examiner nor the Commission has sufficiently indicated the reasoning which led to the conclusion that fresh meats are excluded from "processed." Fresh meat is declared not within the term "processed meat," but no intimation is given as to what type of meat is comprehended in this classification. Doubts arise as to the effect of the ruling. Even assuming a basis in the evidence for the exclusion, the nature of a ruling of such narrow scope cannot be judged without a broader context.

It is not contended that the establishment of commodity classifications in 1952 was meant to vary the scope of outstanding certificates. That could be effected only in the manner specified in the Act, as the Commission itself declared at the time. 61 M.C.C. 209, 214. Chesapeake indisputably is permitted to carry "processed meats," but the question is what this term covers.

"Processed" is not necessarily synonymous with "manufactured," as we learn from the case of East Texas Motor Freight Lines, Inc., v. Frozen Food Express, 351 U.S. 49, 76 S.Ct. 574, 577, 100 L.Ed. 917. There Frozen Food Express claimed that fresh and frozen meats and fresh and frozen dressed poultry were exempt from I.C.C. regulation as agricultural commodities under Section 203, sub. b(6) of the Interstate Commerce Act, 49 U.S.C.A. § 303, sub. b(6). The District Court held fresh and frozen meats not exempt and from this ruling no appeal was taken. Dressed poultry the Court held within the agricultural exemption, and in upholding this ruling in the Supreme Court, Justice Douglas cited the legislative debates relating to the enactment of Section 203, sub. b(6), and said in the course of the opinion:

"A chicken that has been killed and dressed is still a chicken. Removal of its feathers and entrails has made it ready for market. But we cannot conclude that this *processing* which merely makes the

chicken marketable turns it into a 'manufactured' commodity.

"At some point *processing* and manufacturing will merge. But where the commodity retains a continuing substantial identity through the *processing* stage we cannot say that it has been 'manufactured' within the meaning of § 203(b)(6)." (Italics ours.)

From the Congressional debates it is apparent that "processed" is sometimes used to indicate meats subjected to the earlier stages of treatment preceding "manufacturing."

In another I.C.C. case, the term "manufactured or prepared foods"—a still different though similar term—has been deemed not to embrace packing house products generally, and fresh meats in particular, Pomprowitz v. United States, D.C.E.D.Wis., 119 F.Supp. 824, 825, affirmed 348 U.S. 803, 75 S.Ct. 42, 99 L. Ed. 634; yet there is some basis for the view that slaughtering is a "processing operation," and it was so held in another area, in a case under the Fair Labor Standards Act, 29 U.S.C.A. § 201 et seq. Walling v. Peoples Packing Co., Inc., 10 Cir., 132 F.2d 236, 240. We may ask ourselves whether "processed" includes such commodities as smoked meats. Assuming that it does, it might rationally be considered that "processed" excludes "fresh." However, it might also be thought that such articles as smoked or cured meat are embraced instead in the term "prepared." If so, and if, at the other pole, it is held also not to include "fresh," the question would arise, what is left in the "processed" classification?

If by excluding fresh meat from the definition of "processed," the latter term would be emptied of all meaning, then such exclusion might well be deemed arbitrary. On the other hand, if in deciding that fresh meat was not included within the scope of its earlier grant of authority to haul "processed" meat, the grant would still be left with some meaningful content, the Commission's decision might well be allowable. We have no way of knowing from the opinion what,

if anything, remains in the category "processed."

Giving consideration to the classification of other products might furnish the key to our question, or might show that the suggested inquiry is not pertinent, and thus settle the existing doubt.

In interpreting the meaning of one of its certificates the I.C.C. is ordinarily not required to lay down a complete code delineating everything embraced in a previously established commodity category. It need only decide the particular case. It is necessary, however, for the Commission to indicate its definition of terms with such clarity that the reviewing court may at least see if there is a reasonable basis for the decision.

When administrative officials merely turn "thumbs up" or "thumbs down" without adequate explanation, little opportunity is left for intelligent review. Two alternatives are then offered the reviewing tribunal if it undertakes a final disposition of the complaint. The first is automatically and uncritically to rubber stamp the administrative action without any effective review; the other is to undertake to search out the matter independently, with the inevitable tendency to substitute judicial for administrative judgment. Both alternatives are undesirable and alien to the traditional scheme, and can be avoided only if administrators make full exposition of the reasons for the actions they take.

The point is that without a broader disclosure we cannot appraise the Commission's action to the degree required of us under principles of review laid down in Universal Camera Corp. v. N. L. R. B., 340 U.S. 474, 71 S.Ct. 456, 95 L.Ed. 456. While we are fully mindful that the Commission is one "appointed by law and informed by experience," and we are prepared to accord its determinations, both of law and fact, the deference to which they are entitled, the Court too has a responsibility. Its task, though limited in scope, cannot be performed without knowledge of the underlying reasoning and effect of the Commission's

decision. "We must know what a decision means before the duty becomes ours to say whether it is right or wrong." United States v. Chicago, M., St. P. & P. R. Co., 294 U.S. 499, 511, 55 S.Ct. 462, 467, 79 L.Ed. 1023. See also Secretary of Agriculture of United States v. United States, 347 U.S. 645, 653–654, 74 S.Ct. 826, 98 L.Ed. 1015.

Of possible significance also is the fact that the Supreme Court's decision in East Texas Motor Freight Lines, Inc., v. Frozen Food Express, supra, came later than the order of the I.C.C. in this case. We think the I.C.C. should reconsider the present case in light of that decision. We are not deciding the effect of Frozen Food Express upon this case. We think this question should first have the attention of the I.C.C. The Commission, as interpreter of its certificates, not this Court, should in the first instance decide whether the statutory definitions as construed by the Supreme Court in the Frozen Food Express case, have any bearing here.

For these reasons we will remand the case to the Commission. The other questions raised can await later decision when the case is returned to us.

Remanded.