MARINE TRANSPORT LINES, INC., and National Water Carriers Association, Plaintiffs,

v.

UNITED STATES of America and Interstate Commerce Commission, Defendants, and Alabama Great Southern Railroad Co. et al., Intervening Defendants.

Civ. A. No. 1869-57.

United States District Court District of Columbia.

May 6, 1959.

Mark P. Schlefer and John Cunningham, Washington, D. C., for plaintiffs.

Maurice A. Fitzgerald, Washington, D. C., for defendant United States.

H. Neil Garson, Washington, D. C., for defendant Interstate Commerce Commission.

Charles P. Reynolds, Washington, D. C., for Railroad intervenors.

Before BAZELON, Circuit Judge, and McLAUGHLIN and SIRICA, District Judges.

PER CURIAM.

██  Plaintiffs have filed a motion for summary judgment in their suit to enjoin or annul an order of the Interstate Commerce Commission made under § 4(1) of the Interstate Commerce Act.[1]

---

1. 24 Stat. 380 (1887), as amended, 49 U.S.C.A. § 4(1).

This suit was instituted by plaintiffs on July 26, 1957; a temporary restraining order suspending the long-haul rate was granted that day. Subsequently, defendants filed a motion to dissolve the re-straining order and to dismiss the complaint, arguing that the venue was improper, that plaintiffs had failed to exhaust their administrative remedies, that plaintiffs lacked standing to sue, and that the Court was without jurisdiction of the subject matter. Defendants' motion was

Under that section, the Commission may, in special cases, authorize the railways to charge lower rates for long distance hauls than they charge for hauls of shorter distances between intermediate points along the long-haul routes, provided, however, that such lower rates are "reasonably compensatory." The present order authorizes a lower rate ($9.46 per gross ton) for transportation of sulphur between Texas and certain points in Virginia, than is authorized for transportation of sulphur between intermediate points along these routes.

These proceedings were initiated in 1954 upon the petition of the railways, intervenors here, for reduced long-haul rate authorization under § 4(1). Marine Transport, among others, filed protests. Hearings followed, wherein the examiner, and subsequently Division 2 of the Commission, rejected the proposed reduced rate of $9.46 on the ground that it was "not shown to be just and reasonable." Thereafter, further hearings were held, culminating in the present order by the full Commission authorizing the $9.46 rate.[2]

■■■ Plaintiffs raise a number of grounds upon which to base their contention that the Commission's order is invalid as a matter of law. It is unnecessary for us to consider most of these grounds, however, since we hold that the Commission failed to make basic findings essential to the validity of its conclusion that the authorized long-haul rate is reasonably compensatory. Without these findings, this Court is unable intelligently to perform its assigned function of review. See, e. g., Chesapeake Motor

Lines, Inc. v. United States, D.C.D.Md. 1957, 153 F.Supp. 812.

In determining the cost of transporting sulphur over the specified long-haul routes—a threshold determination necessarily underlying a conclusion that the proposed rate is reasonably compensatory—the Commission purported to analyze conflicting cost studies submitted by the railways and Marine Transport. While each of these studies was based upon the standard cost formula (Rail Form A) evolved by the Commission's cost finding section, the Commission found that each deviated from it in material respects. However, the Commission's analysis of these studies was limited to a recitation of the contentions made by each party to justify its study and its deviation from the standard formula. Although the Commission acknowledged that, due to economies in handling the sulphur traffic, Rail Form A was not entirely suitable for determining the cost of this traffic, it merely stated that the railways' cost study "more closely reflects those [costs] actually incurred on this traffic than [the cost study] of the protestants * * *." Finally the Commission concluded that "Considering the cost data of record and the criticism thereof, the rail service performed, and the rate comparisons submitted, we are persuaded that the proposed rate of $9.46 would be reasonably compensatory."

■■ The Commission made no attempt to resolve the conflict emanating from the studies by explaining what variations from the standard formula were necessary or permissible to meet the realities of sulphur transportation, or by stating in what respect the rail-

denied insofar as it sought to dismiss the complaint. Because we felt that plaintiffs did not sufficiently show irreparable injury, the temporary restraining order was dissolved, and plaintiffs' motion for a temporary injunction was denied.

Defendants argue that resort to motion for summary judgment is not available to the plaintiffs in this proceeding. In our view, however, motion for summary judgment on behalf of either party or

both parties is appropriate since only issues of law are presented. See Midwest Farmers v. United States, D.C.D.Minn. 1945, 64 F.Supp. 91; Koppers Co. v. United States, D.C.W.D.Pa.1958, 166 F. Supp. 96.

2. Crude Sulphur from Louisiana and Texas to Virginia, 300 I.C.C. 715 (1957). Commissioner Arpaia concurred in the result of the Commission's order. Com-

ways' cost study was preferable to that of Marine Transport. In sum, it totally failed to expose the considerations for its determination that the rate was reasonably compensatory. Such an exposition is required in all events—but its need here is highlighted by the earlier determination of a division of the Commission that the very rate we discuss was "not shown to be just and reasonable." The order under review is therefore invalid and must be set aside. See, e. g., Chesapeake Motor Lines, Inc. v. United States, supra; Baltimore & Ohio R. Co. v. United States, D.C.D.Md.1957, 151 F. Supp. 258; Tennessee Valley Authority v. United States, D.C.N.D.Ala.1951, 96 F.Supp. 409, and cases cited therein.

█ The Commission also erred in another respect. Evidence proffered by Marine Transport was excluded in the course of the hearings before the examiner in February of 1956. This evidence tended to prove that railway costs had increased significantly since the date upon which the submitted cost studies were based—January 1, 1955.[3] The evidence included affidavits, sworn to by the principal officers of various railways, and previously submitted in proceedings [Ex Parte No. 196] instituted by the railways for allowance of across-the-board rate increases based on increases in railway costs during the year of 1955. The hearing examiner excluded this evidence on the ground that its introduction might require consideration of the entire record of the Ex Parte No. 196 proceeding. He recommended, however, that the Commission require the railways to add to their proposed charges the six per cent rate increase allowed by

the Commission in the Ex Parte No. 196 proceeding. The Commission did not adopt this recommendation.[4]

█ It is true that courts·have frequently allowed the Interstate Commerce Commission broad latitude in excluding evidence purporting to bring up to date cost studies made earlier in the administrative proceeding. Interstate Commerce Comm. v. Jersey City, 1944, 322 U.S. 503, 64 S.Ct. 1129, 88 L.Ed. 1420; Illinois Commerce Comm. v. United States, 1934, 292 U.S. 474, 54 S.Ct. 783, 78 L.Ed. 1371. It is elementary, however, that an administrative proceeding in which relevant evidence is excluded is open to attack as violative of due process. See, e. g., Donnelly Garment Co. v. National Labor Relations Board, 8 Cir., 1941, 123 F.2d 215; and cases cited therein. The discretion delegated to the Commission to exclude evidence rests in part on the idea that " 'the Commission necessarily projects into the future the results of a decision based on conditions disclosed in the record,' * * *."[5] Equally important, it rests on the very practical consideration that, due to continual variations in costs and prices, no end to administrative rate proceedings could otherwise be achieved. In other cases the Commission has exercised this discretion to exclude evidence where the administrative process has already culminated in a Commission order. Thus in the Jersey City case, supra, the evidence which the Commission was permitted to exclude was adduced on a petition for rehearing. In the Illinois Commerce Commission case, supra, similarly, the new evidence excluded was put forward for the purpose of supplementing

---

missioner Murphy dissented fom the order.

3. In support of its motion for summary judgment, plaintiffs introduced the deposition of the head of the Commission's Cost Finding Section, indicating that the cost increases testified to in Ex Parte No. 196 were applicable to the sulphur traffic as well as to traffic generally.

Defendants did not introduce any material sufficient to raise a factual issue on the general effect of the cost increases.

4. We express no view on the merits of this recommendation.

5. Atchison, T. & S. F. Ry. Co. v. United States, 1931, 284 U.S. 248, 261, 52 S. Ct. 146, 150, 76 L.Ed. 273.

a cost study already having formed the basis of Commission action.[6]

In the present case, however, the evidence excluded would have amplified cost studies not yet considered by the examiner—let alone the Commission—and adduced while the hearings were still in progress. The various delays contemplated by the Court in the Jersey City and Illinois Commerce Commission cases clearly were not present. In fact, it is unlikely that introduction of the evidence put forward by Marine Transport would, as the examiner assumed, have necessitated broad expansion of the § 4(1) hearing to encompass the issues, and consequently the evidence, involved in the rate increase proceeding. The only parties to the § 4(1) proceeding who would have any interest in contradicting the evidence of cost increase were the very parties who were relying on the evidence of cost increase in the Ex Parte No. 196 proceeding.

Plaintiffs make various other objections. Briefly they are that the Commission proceeded on an erroneous theory of the costs which must be covered in order that a rate be reasonably compensatory; that the Commission failed to consider collateral loss to the railways resulting from the rate decrease; that the Commission failed to give effect to the National Transportation Policy. Since these matters may be clarified or resolved by the Commission's action on remand, we do not consider them now.

Accordingly, we must grant the plaintiffs' motion for summary judgment enjoining and annulling the Commission's order and remand the proceedings to the Commission for any further action the Commission may deem appropriate in accordance with this opinion.

Counsel shall prepare an order in conformity with this opinion.

6. Cf., Ohio Bell Telephone Co. v. Public Utilities Comm., 1937, 301 U.S. 292, 57 S.Ct. 724, 81 L.Ed. 1093; Railroad Comm. of California v. Pacific Gas & Electric Co., 1938, 302 U.S. 388, 393, 58 S.Ct. 334, 82 L.Ed. 319; Inland Motor Freight v. United States, D.C.D.Idaho 1941, 36 F.Supp. 885, 887; Jersey City

v. United States, D.C., 54 F.Supp. 315, 316–317, reversed 1944, 322 U.S. 503, 64 S.Ct. 1129, 88 L.Ed. 1420; Inter-City Transp. Co. v. United States, D.C.D.N.J. 1948, 89 F.Supp. 441. But see Atchison, T. & S. F. Ry. Co. v. United States, supra note 5.