### SOUTH ATLANTIC S. S. CO. OF DELAWARE v. NATIONAL LABOR RELATIONS BOARD.

#### No. 9491.

Circuit Court of Appeals, Fifth Circuit.

Jan. 3, 1941.

Rehearing Denied Feb. 1, 1941.

Edward Brennan and W. Walter Douglas, both of Savannah, Ga., for petitioner.

William L. Standard, of New York City, for intervener, National Maritime Union of America.

Robert B. Watts, Gen. Counsel, National Labor Relations Board, and Alvin J. Rockwell, Atty., Department of Justice, both of Washington, D. C., for respondent.

Before FOSTER, HUTCHESON, and HOLMES, Circuit Judges.

HUTCHESON, Circuit Judge.

The petition is for the review of a board order containing cease and desist provisions and requirements for affirmative action. The order required petitioner to cease and desist from (a) discouraging membership in the National Maritime Union of America, hereinafter called N. M. U., or any other organization, (b) refusing to issue passes to such union or any other on equal terms with that accorded to representatives of the International Seamen's Union of America, hereinafter called I. S. U., and (c) in any other manner interfering with its employees in their right of reorganization. It also required petitioner to offer reinstatement to 20 discharged men, members of N. M. U. and to make them and three others who had been re-employed, whole as to lost earnings and maintenance.

The claim in general is that the order is without support in the evidence. In particular, it is that under the undisputed facts there was no discrimination and no unlawful discharge, for that petitioner had a closed shop contract, either written or oral or both with I. S. U., and under such contract, it was compelled to and did refuse reemployment to the seamen in question because they had left the I. S. U., to join the N. M. U., and the I. S. U., upon the threat of a strike on all the vessels of the company, had insisted upon recognition of a closed shop and refused to permit petitioner to sign the men on. Except upon the questions, (1) as to the construction by the parties of the written agreement, (2) as to whether there was an oral agreement for a closed shop, and (3) as to discrimination in the matter of issuing passes, the evidence is without dispute and this is what it shows.

In 1935, prior to the organization of N. M. U., a C. I. O. affiliate, petitioner, along with other shipping companies, entered into a written agreement [1] with I. S. U., an A. F. of L. affiliate. Within a comparatively short time thereafter, all of the seagoing unlicensed personnel, hereinafter for brevity, designated as seamen, on all of petitioner's ships, had become members of I. S. U.

On August 3, 1937, shipping articles were signed aboard the steamship Saccarappa at Savannah, Georgia, for a foreign voyage. On September 20, 1937, the ship returned from this foreign voyage and docked at Charleston, South Carolina, and all of the seamen were formally signed off the Foreign Articles and all were paid off in full. The ship on September 21 sailed for Wilmington, North Carolina with the same seamen and while at sea, the seamen signed coastwise articles. On September 22, the ship arrived at Wilmington and while there, an organizer from N. M. U., boarded her and all of the seamen, 23 in number, who had been members of I. S. U., left that union and joined N. M. U. On September 23, the ship sailed for Newport News, Virginia, to undergo repairs, left Newport on September 30 and arrived in Savannah on October 5, where the seamen were signed off the coastwise articles and paid in full. Word of the change of unions having come to Waid, the representative of I. S. U., he notified petitioner that if these

---

[1] Article I, Section 2. " * * * every effort shall be made by the representatives of the Union and the Company involved amicably to adjust * * * (b) * * * any * * * dispute or difference which may arise concerning the interpretation or performance of this Agreement."

Article II, Section 1. "It is understood and agreed that, as vacancies occur, members of the International Seamen's Union of America, who are citizens of the United States, shall be given preference of employment, if they can satisfactorily qualify to fill the respective positions; provided, however, that this Section shall not be construed to require the discharge of any employee who may not desire to join the Union, or to apply to prompt reshipment, or absence due to illness or accident."

Article II, Sections 3 and 4. Briefly stated these Sections provide that "The authorized representatives of the Union shall have the right to go on board ships covered by this Agreement, subject to regulations prescribed by the Owners, for the purpose of consulting with seamen employed thereon." The Union agrees to take out indemnity insurance to protect the owner, etc., from claims for damages for loss of life or injury occurring to such representatives of the Union while on board.

men were no longer members of I. S. U., petitioner under its agreement could not sign them on for another foreign voyage. As petitioner was being made the victim of a dispute between rival labor unions and its agreement with I. S. U. would expire on December 31, 1937, petitioner endeavored to obtain Waid's consent to sign the 23 men on for another foreign voyage. This was refused with the threat that if they were signed on, the American Federation of Labor would call a strike of all I. S. U. seamen on petitioner's ships and also of the longshoremen. Petitioner yielding to this insistence and this threat did sign I. S. U. men on in place of the 23 N. M. U. seamen and thus completely terminated the connection with it of the seamen. Upon these facts and upon the evidence of Waid and of Sullivan, vice-president of petitioner, that after all the men had joined I. S. U. the written agreement was acted on and construed by the parties to it as providing for a closed shop, petitioner argues, that in declining to sign N. M. U. men on and taking I. S. U. men in their stead, the parties were not only acting upon this construction but were in effect then making an oral agreement for a closed shop. So arguing it insists; that the board's findings, that there was no closed shop agreement, and that the refusal to sign the N. M. U. men on was a discriminatory discharge of employees, was without support in the evidence; and that the provision of the order for reinstatement and back pay based on that finding may not stand. Upon the matter of discrimination in the issuance of passes, it is petitioner's position; that its contract with I. S. U. required it to grant passes to representatives of that union, that it had no contract with N. M. U. and that in refusing passes in connection with an election then about to be held, it did not discriminate, for it refused passes to both unions and it did this in accordance with a practice approved by the board.

The board on its part insists that the written agreement by its terms was not for a closed shop but precisely to the contrary, since it provided "this section is not to be construed to require the discharge of any employee who may not desire to join the union." To the Claims, 1, that the agreement was converted into one for a closed shop by the construction the parties gave it by their actions under it, and, 2 that an oral agreement for a closed shop was made at the time when the N. M. U. seamen were refused permission to sign on, the board replies: (1) That no amount of construction of a plain agreement can in law change an agreement which in terms was not for, to one for, a closed shop, as this would not be the construction of an old, but the making of a new agreement; (2) that there was no such construction of it as would, in fact, if it could in law, give it that effect, and (3) that the refusal to sign on the 23 N. M. U. men and the signing on of I. S. U. men in their stead, was in no sense an agreement then for a closed shop but was merely a yielding by petitioner under the threat of a strike to the unwarranted demands of the I. S. U. Upon the question of discrimination as to passes, the board correctly pointing out that it is not bound by the evidence of Waid and of petitioner's employees, on which petitioner relies, insists that there is ample evidence of discrimination to bring the case directly within the ruling made in the Waterman Steamship Company.[2]

We have carefully examined the record in the light of these contentions and we think it quite clear that the agreement in itself was not intended to be, and cannot by construction be made into, the closed shop agreement which the law[3] permits and provides for. We think it equally clear that the petitioner's yielding to the threat of a strike and discharging these N. M. U. men under that threat, was not intended by the parties to be nor was it the making of an oral closed shop agreement. The matter then stands as to these men, precisely as it stood as to the N. M. U. men in the Waterman case, supra. And just as it was there held that the provision of the contract for filling vacancies with I. S. U. men could not apply to the employees who had changed from I. S. U. to N. M. U., because as to them there were no vacancies, so it must be held; that it cannot apply here; that the board's finding that there were discriminatory discharges is well supported; and that its affirmative order as to the men discharged is valid and must be enforced, except as to the provision forbidding petitioner's taking credit for sums earned from, and requiring such amounts to be repaid to, the appropriate agencies, which the board

[2] National Labor Relations Board v. Waterman Steamship Corp., 309 U.S. 206, 60 S.Ct. 493, 84 L.Ed. 704.

[3] Title 29, § 158 (3), U.S.C.A.

now admits it was beyond its powers to impose. Upon the matter of discrimination as to passes and the order in regard thereto, we cannot say that the finding of the board, that such discrimination occurred, is unsupported by substantial evidence. It follows then that the petition for review must be denied and that upon the board's request for enforcement, its cease and desist orders and its requirements for affirmative action, as modified by striking from it the public employment provision as above, will be ordered enforced as written. A decree appropriate thereto may be presented for entry.