**BROTHERHOOD AND UNION OF TRANSIT EMPLOYEES OF BALTIMORE v. MADDEN, Regional Director, National Labor Relations Board.**

Civil Action No. 2410.

District Court, D. Maryland.

Dec. 16, 1944.

Jacob Blum, of Baltimore, Md., for petitioner.

Charles F. McErlean, Alvin J. Rockwell, and Malcolm F. Halliday, all of Washington, D. C., and Earle K. Shawe, of Baltimore, Md., for defendant.

WILLIAM C. COLEMAN, District Judge.

The petitioner in the present case, the Brotherhood and Union of Transit Employees of Baltimore, seeks to have the defendant, Ross Madden, Regional Director of the National Labor Relations Board, enjoined from conducting an election under the National Labor Relations Act, 29 U.S.C.A. § 151 et seq., in accordance with the Board's order and directive issued on November 9th, 1944, following a proceeding for investigation and certification of representatives purported to have been conducted pursuant to Section 9(c) of the National Labor Relations Act, 29 U.S.C.A. § 159(c).

The present controversy originated as a result of the filing of separate petitions, one by the present petitioner, which is affiliated with the so-called Confederated Unions of America, and the other by The Amalgamated Association of Street, Electric Railway and Motor Coach Employees of America, a branch of the American Federation of Labor, in which each union alleged that a question affecting commerce had arisen concerning the representation of employees of the Baltimore Transit Company and its affiliate, The Baltimore Coach Company. Thereupon, the National Labor Relations Board consolidated the proceedings with respect to both petitions and gave due notice, dated July 3, 1944, of a consolidated hearing thereon to the effect that in addition to an investigation. of the question of representation, evidence .would be heard on the issue of whether the present petitioner is a successor to or continuation of the Independent Union of the Transit Employees of Baltimore City, which had heretofore been disestablished by the Board. See National Labor Relations Board v. Baltimore Transit Co., 4 Cir., 140 F.2d 51, certiorari denied 321 U.S. 795, 64 S.Ct. 848. Previous to this hearing notice, that is, on March 20, 1944, a charge had been filed with the Regional Director of the Board by the Amalgamated Association, to the effect that the present petitioner was a successor to the Independent Union which, as just stated, had previously been disestablished by the Board. However, the Board did not undertake to proceed with a hearing with respect to this charge but conducted an extended hearing in the Summer of 1944, in accordance with the notice, as just explained, for a consolidated hearing in Baltimore.

At this hearing the Company, the present petitioner, and the Amalgamated participated but the present petitioner objected to the form of the hearing. That is to say, it challenged the right of the Board to consider at this hearing any evidence relating to or to rule upon the question of whether or not it, the petitioner, was, in fact, a successor of a disestablished union, contending that such a matter could not be considered in a proceeding under Section 9(c) of the Act, 29 U.S.C.A.

§ 159(c), which provides for hearing and determination of questions of employee representation for collective bargaining, but only in a complaint proceeding under Section 10 of the Act, 29 U.S.C.A. § 160, alleging an unfair labor practice by the employer, in violation of Section 8(2) of the Act, 29 U.S.C.A. § 158, Subsec. (2); or, in a contempt proceeding, based upon an outstanding court decree affirming the Board's order of disestablishment. However, the Trial Examiner ruled that the Brotherhood, the present petitioner, was a continuation of and a successor to the Independent, the disestablished union, and accordingly, dismissed the Brotherhood's petition for certification of representatives, etc., but entertained the Amalgamated Association's petition, and made rulings with respect to its representation, and directed the holding of an election. All of these rulings of the Trial Examiner were affirmed by the Board which made lengthy findings of fact, upon which it based its order of November 9, 1944, dismissing the present petitioner's petition for investigation and certification of employee representation. This resulted in denying it a place on the ballot at the election, which was duly called for November 28th, in conformity with the Board's decision. Thereupon, on November 24th, the petitioner instituted the present suit to stop the election.

The basis of the present petitioner's contention, as set forth in the petition, is that since intermediate action by the Board in representation proceedings is not subject to court review, whereas the Board's action in complaint proceedings is subject to such review, when, therefore, the Board makes a finding of successorship in a representation proceeding, as it has done in the present instance, instead of in a complaint proceeding, the union adversely affected is thereby cut off from its right of appeal on the question of successorship which it would otherwise have had.

Among the grounds of the motion to dismiss the petition which the National Labor Relations Board has filed on behalf of the present defendant, the Board's Regional Director, is the ground that plaintiff failed to comply with the Federal Rules of Civil Procedure, 28 U.S.C.A. following section 723c, with respect to (1) form of complaint, and (2) form and service of summons. At the commencement of the hearing, these points were fully considered by the Court, were found to be totally lacking in merit and were disposed of by an oral opinion. Accordingly, it is unnecessary to consider them again in this opinion so we confine ourselves to the remaining grounds on which the motion to dismiss is based, which may be summarized as follows: (1) That this Court has no jurisdiction over the subject matter of this suit because the National Labor Relations Act completely excludes from the United States District Courts all power to review the present action of the Board, the only type of judicial review authorized by the Act being by the United States Circuit Courts of Appeals, and where, as here, employee representation proceedings have been undertaken under Section 9(c), only if the Board has issued a cease and desist order in an unfair labor practice case under Section 10(c) of the Act; and, furthermore, only when such cease and desist order is based upon facts certified by the Board pursuant to an investigation under Section 9(c); (2) that the petition fails to set forth any facts showing that plaintiff is threatened with or in danger of suffering any great irreparable or immediate injury or damage, cognizable as a result of any action taken or to be taken by the defendant which would entitle it to injunctive relief; (3) that the petition is premature in that the action sought to be enjoined is merely an intermediate step in a proceeding pending before the Board; and (4) that the National Labor Relations Board and its members are indispensable parties to this action, since what is sought to be enjoined is, in reality, the action and conduct of the Board or such action and conduct as the defendant, a subordinate agent of the Board, can undertake only at the direction of the Board.

The Board's position with respect to each one of the above four grounds may, perhaps, be best stated and understood by quoting the following taken from the Board's opinion (pp. 5, 6) which summarizes the Board's position: "It would appear to be the position of the Brotherhood that the Board is powerless in a representation proceeding to deny any union a place on the ballot on the ground that it is a successor to an organization previously ordered disestablished unless a finding of such successorship is first made in a complaint proceeding. Solely from the standpoint of effectuating the purposes of the Act, we consider such a concept of the

dual functions bestowed upon the Board to be clearly erroneous. If such an interpretation of the Act were valid, it is entirely conceivable that, in a given situation, a representation proceeding would be postponed indefinitely. Thus, for example, a complaint proceeding might result in the disestablishment of one union, only to have its successor spring up and intervene in the representation proceeding. To keep the successor off the ballot, another complaint proceeding would have to be instituted to disestablish it. Thereafter, a second successor might spring up and intervene in the representation proceeding, and so on ad infinitum. Meanwhile, the employees concerned would be denied the opportunity to choose a collective bargaining representative which the Act guarantees, with resultant friction between management and employees, and among groups of employees. The very purposes of the Act would be thwarted thereby. To avert such a vicious cycle, the Brotherhood suggests that the Board should institute contempt proceedings, and there try the issue of successorship. It is true that contempt proceedings may be lodged against an employer where the Board's order of disestablishment has been enforced by court decree, and a successor organization has come into existence. But there may be situations in which the employer has engaged in no overt acts of a contemptuous character and yet the successor organization may clearly appear to the employees to be tainted as was its predecessor. However, the existence of facts which may arguably be said to be such as to warrant contempt proceedings does not mean that all activity with respect to a representation proceeding must be stayed, pending the determination by the courts that an employer is or is not in contempt. Nowhere in the Act is there any indication that the Board is compelled to resort first to action under Section 10, or proceedings ancillary thereto, in order effectively to perform its functions under Section 9 of the Act. The argument that, because alternative courses of action are available the Board is precluded from the procedure followed herein, is particularly not persuasive where a legitimate organization is claiming to represent a majority of the Company's employees in an appropriate unit, and when the prompt resolution of its claim may serve to resolve the entire controversy and preclude the necessity for further protracted proceedings."

With the aforegoing we are unable to agree for the reason that we believe it is an erroneous interpretation of the provisions of the National Labor Relations Act. We believe that, as contended by counsel for the plaintiff, the two questions of representation and successorship are separate and distinct and are not, either by express or implied language, permitted to be fused, as the Board has done in the present case, whatever motive the Board may have had in so doing, because the very result of such fusion · or consolidation results in taking away from a union the right which the Act expressly affords it, to contest, and pursue by appeal to the Circuit Court of Appeals, the question whether it is in fact a successor to a company-dominated union.

The Supreme Court has decided that there is no judicial right to review a proposed election and in effect to supervise the manner in which it shall thereafter be conducted. Nor does authority for anticipatory judicial control of election methods exist in Section 9(d) of the Act until the Board issues an order and requires the employer to do something predicated as a result of an election. American Federation of Labor v. National Labor Relations Board, 308 U.S. 401, 60 S.Ct. 300, 84 L.Ed. 347; National Labor Relations Board v. International Brotherhood, 308 U.S. 413, 60 S.Ct. 306, 84 L.Ed. 354. In the present case, the Board claims that hardship, embarrassment and delay of a procedural character in the orderly conduct of employer-employee relationships would result if the Board were not allowed to do what it has done in the present case. It appears to consider that since it is its practice to deny, in a representation proceeding, a place on the ballot to a union previously found to be company-dominated in a complaint proceeding,—see National Labor Relations Board v. Falk Corporation, 308 U.S. 453, 60 S.Ct. 307, 84 L.Ed. 396—it has equal authority to do, in effect, the reverse, namely, to combine, in a representation proceeding, a consideration and determination of what would be embraced in a complaint proceeding. But we do not interpret the National Labor Relations Act as giving any such authorization to the Board. There is no analogy between the two cases. In the one, the complaint proceeding as to which the Act authorizes judicial review is carried out in conformity with the provisions of the Act—

it is the basic proceeding. Such practice is consistent with the express provision of Section 9(d) authorizing the results of a representation proceeding to be part of the record in the case of a petition for the enforcement or review of an order of the Board in an unfair labor practice, i.e. in a complaint proceeding duly and separately held. Whereas, in the situation such as we have in the present case, *there has been no complaint proceeding as contemplated by the Act;* the representation proceeding has been made the basic proceeding and the question of successorship, with respect to which the Act makes special provision for court review, is merged in the representation proceeding.

The distinction is made clear in the following quotations taken from the opinion of the Supreme Court in National Labor Relations Board v. Falk Corporation, supra, 308 U.S. 453 at pages 454, 455, 456, 60 S.Ct. 307, at page 308, 84 L.Ed. 396: "Upon charges filed by the Amalgamated Association of Iron, Steel, and Tin Workers of North America, Lodge No. 1528, the Labor Board found that respondent, an employer conceded to be engaged in interstate commerce, had, in violation of the National Labor Relations Act, interfered with its employees' free right to self organization and had fostered and dominated a company union called the Independent Union. Respondent was ordered to cease and desist from such interference and domination; to disestablish the company union completely, and to post notices in its plant of compliance with the Board's order. At the same time and in a proceeding consolidated with the determination of the alleged unfair labor practices, the Board, also upon petition of Amalgamated, directed an election of a representative for collective bargaining on a ballot to contain the Amalgamated and the Operating Engineers—a participant in the consolidated hearing—but not the Independent."

■ What will constitute company-domination or coercion of a successor union has been adjudicated by the Supreme Court. See National Labor Relations Board v. Newport News Co., 308 U.S. 241, 60 S.Ct. 203, 84 L.Ed. 219; Westinghouse Electric & Mfg. Co. v. National Labor Relations Board, 2 Cir., 112 F.2d 657, certiorari granted 311 U.S. 639, 61 S.Ct. 135, 85 L.Ed. 407, judgment affirmed 312 U.S. 660, 61 S.Ct. 736, 85 L.Ed. 1108. It is true that a conclusion of the Board that a union is company-dominated will not be set aside if supported by substantial evidence. See National Labor Relations Board v. Southern Ass'n of Bell Telephone Employees, 319 U.S. 50, 63 S.Ct. 905, 87 L.Ed. 1250. However, this is a question quite apart from whether there shall be an opportunity for judicial review.

Furthermore, it hardly lies in the mouth of the Board in the present case to emphasize possible resulting complications if the procedure which it has followed is upset, in view of the fact that it had an opportunity to have adjudicated and to bring to a finality, months ago, the matter of successorship if it had proceeded with due celerity with the complaint proceeding which, as heretofore explained, had been instituted as early as March 20, last.

■ The precise point here involved appears never to have been adjudicated by any Federal court. The Board contends that such injury as may have been caused the petitioner is one for which the law affords no remedy. Further, the Board asserts that petitioner has failed to show that it has suffered or is likely to suffer, unless the Board be restrained, that type of injury which is a condition precedent to the exercise of the jurisdiction of a court of equity, namely, great, irreparable or immediate injury. However, since, as we believe, the Board has transgressed the bounds of its statutory authority, which is the only authority it possesses, nothing further is required to justify equitable relief since clearly there is no adequate remedy at law. Nevertheless, it is appropriate to point out that if the election is allowed to proceed in accordance with the Board's present directive, before petitioner has had an opportunity to obtain a final, separate determination whereby, and only whereby, it may maintain its right to a judicial review of such determination in the event of an adverse ruling by the Board as to its right to be on the ballot at such election, the fact that it might get a judicial determination in its favor later on, might obviously be a mere empty right. It might lose and never be able, in any subsequent election, to obtain the sort of representation to which it might lawfully be entitled, although, of course, we are not now attempting in any sense to pass upon the merits of the controversy as between the respective unions.

Even though, as just stated, the point at issue has not heretofore been decided, we find support for our conclusion that petitioner has made out a case for equitable relief in what was said in American Federation of Labor v. National Labor Relations Board, supra, at the close of the Court's opinion, as follows (308 U.S. 401 at page 412, 60 S.Ct. 300, at page 305, 84 L.Ed. 347); "The Board argues that the provisions of the Wagner Act, particularly § 9(d), have foreclosed review of its challenged action by independent suit in the district court, such as was allowed under other acts providing for a limited review in Shields v. Utah Idaho General R. Co., 305 U.S. 177, 59 S.Ct. 160, 83 L.Ed. 111, and in Utah Fuel Co. v. National Bituminous Coal Commission, 306 U.S. 56, 59 S.Ct. 409, 83 L.Ed. 483; cf. Myers v. Bethlehem Shipbuilding Corporation, 303 U.S. 41, 58 S.Ct. 459, 82 L.Ed. 638. But that question is not presented for decision by the record before us. Its answer involves a determination whether the Wagner Act, in so far as it has given legally enforceable rights, has deprived the district courts of some portion of their original jurisdiction conferred by § 24 of the Judicial Code, 28 U.S.C.A. § 41. It can be appropriately answered only upon a showing in such a suit that unlawful action of the Board has inflicted an injury on the petitioners for which the law, apart from the review provisions of the Wagner Act, affords no remedy. This question can be properly and adequately considered only when it is brought to us for review upon a suitable record."

As indicating that no importance should be attached to the statements of the Supreme Court just quoted, as respects the present case, counsel for the Board rely upon the decision of the Court of Appeals for the District of Columbia in Millis v. Inland Empire District Council, etc., 144 F.2d 539. There, certain unions asked for a mandatory injunction requiring the members of the National Labor Relations Board, to set aside a certification, following an election, of the collective bargaining representatives of certain company employees, one of the grounds being the alleged insufficiency of the hearings which the Board held in connection with the election. It was alleged that the employer had bargained with the petitioning unions in the past, would be deterred by the Board's certificate from doing so in the future, and would thereby be caused irreparable injury. The District Court declined to dismiss the complaint on the Board's motion but the Court of Appeals reversed, saying (144 F.2d 539, 540), that the question was considered as "foreclosed by Switchmen's Union of North America v. National Mediation Board, 320 U.S. 297, 64 S.Ct. 95, which held that the District Court had no power to review a similar certification of the National Mediation Board." In so deciding, the Court of Appeals referred to what had been said in American Federation of Labor v. National Labor Relations Board, supra, which we have quoted but gave only secondary weight to it because prior to the decision in the Switchmen's Union case.

Certiorari has been granted, 65 S.Ct. 269, in the Millis case, but even should the Supreme Court affirm the Court of Appeals, we do not feel that such a decision would be determinative of the precise question here at issue becaue the two questions are different. In the Millis case, it was held that the National Labor Relations Act does not authorize judicial review of the Board's certification where the Board has not followed its certification with an order. It is true, as said by Chief Justice Groner in his dissenting opinion in the Millis case (144 F.2d at page 540): "The effect of this is, as it appears to me, to recognize a right on the part of the Board, when it likes and as it likes, by withholding its order, to determine the right of judicial review,—a position which I think is wholly wrong and untenable and neither more nor less than a usurpation of power." So, the present case is analogous in that here, the Board has, by combining the two proceedings, just as effectively cut the present petitioner out of his right to have an order in a complaint proceeding from which he might appeal. However, in the present case, the deprivation of petitioner's right to have access to a court review in a successorship proceeding is a right specifically given to him by the Act, the giving or the withholding of which cannot be said in any sense to be within the whim of the Board.

The following additional paragraphs from Chief Justice Groner's dissenting opinion in the Millis case, appear to us to be significantly applicable to the situation that is before us in the present case (144 F.2d at 540, 541):

"I am by no means unmindful of the extent to which the Supreme Court has

gone in denying review in cases under the Railway Labor Act [45 U.S.C.A. § 151 et seq.] but I am by no means persuaded that because of this the Supreme Court will, when properly confronted, go equally as far in its interpretation of the Wagner Act. At least in the one case in which the question arose the Court expressly reserved consideration. American Federation of Labor v. National Labor Relations Board, 308 U.S. 401, 412, 60 S.Ct. 300, 84 L.Ed. 347.

"Here, as I have pointed out, appellees claim irreparable injury and a lack of due process as a consequence of the certification without a hearing. What support there is of this in the facts I have no means of knowing, but I think it is not an answer to the contention to say that Congress has denied to the courts of the country the right to examine and determine the validity of the charge; or, indeed, that Congress, constitutionally, may do so. It is quite true that in cases under the Railway Labor Act, the Court speaks of the 'right' of an employee to choose his representative as a right created by Congress and, therefore, as a right which Congress having given, Congress may take away; and it may be that the same answer is applicable here, but I prefer that it should be declared by the Supreme Court rather than by this court. For I had always thought that the right of a man to labor and to enjoy the fruits of his labor was an inherent right— a natural prerogative,—which did not arise out of the concession of any State. I had considered it the foundation of all rights where liberty is recognized, and as a species of property which no law can restrict, save in those socialistic states where individual rights and liberties are unknown. If all of this be true, as I had thought was universally recognized, then—representation— the right to combine one's faculties with those of others, and to profit by the combination—is just as incontestable and imprescriptible."

In further support of our view that the decision in Switchmen's Union case, supra, is not conclusive of the precise question now before us but impliedly supports the position which we take, suffice it to make the following brief quotations from the Court's opinion in that case (320 U.S. 297, at pages 304, 306, 307, 64 S.Ct. 95, at page 98):

"While the Mediation Board is given specified powers in the conduct of elections, there is no requirement as to hearings. And there is no express grant of subpoena power. The Mediation Board makes no 'order.' And its only ultimate finding of fact is the certificate. Virginian R. Co. v. System Federation, supra, 300 U.S. page 562, 57 S.Ct. page 606, 81 L.Ed. 789. The function of the Board under § 2, Ninth is more the function of a referee. To this decision of the referee Congress has added a command enforcible by judicial decree. But the 'command' is that 'of the statute, not of the Board.' * * * When Congress in § 3 and in § 9 provided for judicial review of two types of orders or awards and in § 2 of the same Act omitted any such provision as respects a third type, it drew a plain line of distinction. And the inference is strong from the history of the Act that that distinction was not inadvertent. The language of the Act read in light of that history supports the view that Congress gave administrative action under § 2, Ninth a finality which it denied administrative action under the other sections of the Act.

\* \* \* \* \*

"What is open when a court of equity is asked for its affirmative help by granting a decree for the enforcement of certificate of the Mediation Board under § 2, Ninth raises questions not now before us. See Virginian Ry. Co. v. System Federation, supra, 300 U.S. pages 559-562, 57 S.Ct. pages 605, 606, 81 L.Ed. 789."

The petition contains the requisite jurisdictional averments, the truth of and the good faith with respect to the making of which have not been questioned. We find nothing in the decisions in such cases as Myers v. Bethlehem Shipbuilding Corporation, 303 U.S. 41, 58 S.Ct. 459, 82 L.Ed. 638, Newport News Co. v. Schauffler, 303 U.S. 54, 58 S.Ct. 466, 82 L.Ed. 646, or Fur Workers' Union No. 21238 v. Fur Workers'. Union Local No. 72, 308 U.S. 522, 60 S.Ct. 292, 84 L.Ed. 443, upon which counsel for the Board rely, which is contrary to the conclusion which we reach. Those cases and numerous others of a similar character to which we have been referred, deal with attempted court interference with matters essentially of an administrative character, exclusive jurisdiction over which, either by the expressed or implied language of the National Labor Relations Act, has been vested in the Board.

Counsel for the Board contend that the present suit is premature in that the

conduct sought to be enjoined is merely an intermediate step in a proceeding pending before the Board; that the Board's directive for an election is but an intermediate phase of a pending and incomplete investigation under Section 9(c) of the Act; that the ultimate result of such investigation would be that, should it disclose that no person or labor organization has been designated by a majority of employees as a collective bargaining representative, the proceeding will be dismissed, or should it be ascertained that a majority have made such designation, then the Board, by certification will merely announce such fact and the proceeding will be concluded; that even if such a certification should issue, it could not constitute an order or mandate; that the duty of the employer to bargain collectively with such certified representative cannot arise until he makes a request for bargaining; that the certification itself does not require bargaining by the employer; that any duty the employer may be under to bargain collectively with such representative arises solely by reason of the command of the statute; that before the employer could be required to bargain, a new and separate proceeding under Section 10(b) of the Act alleging refusal to bargain would be required, pursuant to which the Board would be required to issue a complaint, hold a hearing and render a decision; that if as a result of such proceeding the Board should issue an order requiring the employer to bargain collectively with the certified representative, anyone aggrieved by such order would have the right to petition for a review of same in the Circuit Court of Appeals pursuant to Section 10(f) of the Act; and that the record made in the certification proceeding, pursuant to Section 9(c) would, in accordance with Section 9(d) be included in the transcript of record before the Court of Appeals.

We are not impressed with these arguments for the reasons which we have already fully given. If sound, they would relegate petitioner to an almost interminable labyrinth of litigation which would make a travesty out of an Act alleged to be remedial.

■ The Board would have us believe that it is indicative of no improper motive that it has resorted to similar procedure in other cases and has not singled out the present petitioner. In answer, suffice it to say that a practice on the part of the Board, no matter how uniformly and long continued, cannot be made a lawful practice unless within the scope and intent of the statute from which, and only from which, the Board derives its powers.

■ The sum and substance of the argument made on behalf of the Board appears to be that Congress has given the Board the right to act in effect as sort of a benevolent despot; that for it to exercise despotic powers is desirable in the long run, for the settling of labor difficulties in this country; and that the Board, in effectuating this benevolent despotism, must be trusted to do the right thing. Clearly, such a theory has no place in our constitutional law.

Having thus dealt, in a combined manner, with the first three of the four grounds upon which the Board bases its motion to dismiss the petition, we turn to a consideration of the remaining ground, namely, that there is an absence of indispensable parties in that the members of the Board are the real parties in interest and necessary to a determination of the issue before us.

In support of this contention, we are referred by counsel for the Board to numerous cases respecting the status as defendants of subordinates of various Government officials. However, we believe that these cases are either not apposite to the question here presented, or do not support the argument made on behalf of the Board. Therefore, we consider a detailed analysis of these decisions to be unnecessary.

■ It is to be noted that we are not here considering an attack upon the constitutionality of an Act of Congress. Nor is this a case where it is claimed merely that superior officers have themselves personally abused their statutory discretion. In such a case, it is generally held that the superior officers should be joined as parties defendant in actions against their subordinates so that the superior officers may defend what they have required their subordinates to do. However, where, as in the present case, the superior officers are without authority to act at all as their subordinate, namely, the Regional Director, has been doing, any attempt on the part of superiors to authorize action by the subordinate would be of no validity. Therefore, the subordinate

may be restrained without joinder of the superior.

We believe that the Supreme Court and the weight of authority in the lower Federal Courts support the above statement of the law.

In Colorado v. Toll, 268 U.S. 228, 45 S.Ct. 505, 69 L.Ed. 927, the sole defendant was the Superintendent of the Rocky Mountain National Park, and it was sought to enjoin him from enforcing certain regulations for the government of the Park, and in particular, respecting roads therein which were alleged to be beyond the authority conferred by any Act of Congress and to interfere with the sovereign rights of the State of Colorado. The Court, in holding that the action could be maintained without joining the Secretary of the Interior as a party defendant, said, 268 U.S. at page 230, 45 S.Ct. at page 506, 69 L.Ed. 927: "The object of the bill is to restrain an individual from doing acts that it is alleged that he has no authority to do and that derogate from the quasi-sovereign authority of the State. There is no question that a bill in equity is a proper remedy and that it may be pursued against the defendant without joining either his superior officers or the United States. Missouri v. Holland, 252 U.S. 416, 431, 40 S.Ct. 382, 64 L.Ed. 641, 11 A.L.R. 984; Philadelphia Co. v. Stimson, 223 U.S. 605, 619, 620, 32 S.Ct. 340, 56 L.Ed. 570."

To the same effect are Berdie v. Kurtz, 9 Cir., 75 F.2d 898, a decision of the Ninth Circuit Court of Appeals; Yarnell v. Hillsborough Packing Co., 5 Cir., 70 F.2d 435, 92 A.L.R. 1475, and Ryan v. Amazon Petroleum Corporation, 5 Cir., 71 F.2d 1, decisions of the Circuit Court of Appeals for the Fifth Circuit. See also National Conference on Legalizing Lotteries, Inc. v. Goldman, 2 Cir., 85 F.2d 66, and Jewel Productions, Inc. v. Morgenthau, 2 Cir., 100 F.2d 390, decisions of the Circuit Court of Appeals for the Second Circuit. Among the most recent decisions is Neher v. Harwood, 9 Cir., 128 F.2d 846, certiorari denied 317 U.S. 659, 63 S.Ct. 57, 87 L.Ed. 529, another decision by the Circuit Court of Appeals of the Ninth Circuit, in which Circuit Judge Stephens deals with the question in a most thorough manner, reviewing in detail the decisions which we have cited and numerous others in the course of explaining the distinction which we have stated. It seems sufficient, therefore, to refer to Judge Stephens' opinion and to adopt his reasoning, rather than to further analyze the cases.

The logic and common sense of not requiring the members of the Board to be joined in a proceeding of this kind is self-evident. The professed object of the National Labor Relations Act is to reduce, to mitigate labor disputes. The declaration of policy underlying the Act is thus set forth in Section 1, 29 U.S.C.A. § 151: "It is hereby declared to be the policy of the United States to eliminate the causes of certain substantial obstructions to the free flow of commerce and to mitigate and eliminate these obstructions when they have occurred by encouraging the practice and procedure of collective bargaining and by protecting the exercise by workers of full freedom of association, self-organization, and designation of representatives of their own choosing, for the purpose of negotiating the terms and conditions of their employment or other mutual aid or protection." If, faced with an ostensible effort to carry out this policy, parties who feel aggrieved by the action of the Board in a case such as the present, are to be deprived of all access to Federal Courts throughout the country save in the District of Columbia where the members of the Board are domiciled, while at the same time the Board and its subordinates are left free to exercise their corresponding rights without any such restriction, the result would be so one-sided, if not, indeed, so oppressive or despotic as to be contrary to the fundamental principles of constitutional law and statutory construction.

Petitioner is therefore entitled to an appropriate restraining order, in accordance with this opinion.