NATIONAL LABOR RELATIONS BOARD
v. NATIONAL BROADCASTING
CO., Inc., et al.

No. 368.

Circuit Court of Appeals, Second Circuit.

July 27, 1945.

896

Alvin J. Rockwell, Gen. Counsel, Malcolm F. Halliday, Associate Gen. Counsel, and Joseph B. Robison and Dominick L. Manoli, Attys., all of Washington, D. C., for petitioner.

Cahill, Gordon, Zachry & Reindel, of New York City (John T. Cahill, A. L. Ashby, and Charles F. Detmar, Jr., all of New York City, of counsel), for National Broadcasting Co., Inc.

Franklin S. Wood, of New York City (Joseph A. McDonald, of New York City, of counsel), for American Broadcasting Company, Inc.

Joseph A. Padway, of Washington, D. C., Henry A. Friedman, of New York City, and Robert A. Wilson, of Washington, D. C., for American Federation of Musicians.

Before SWAN, CHASE, and CLARK, Circuit Judges.

SWAN, Circuit Judge.

This case is before us upon the petition of the Board for enforcement of an order made in consolidated proceedings brought under section 10 of the Act, 29 U.S.C.A. § 160, against National Broadcasting Company, Inc., hereafter called NBC, and American Broadcasting Company, Inc., hereafter called ABC.[1] American Federation of Musicians, a labor organization hereafter called AFM, was a party to the proceedings and is named as a respondent to the Board's petition. The order sought to be enforced requires NBC and ABC, respectively, to bargain collectively with National Association of Broadcast Engineers and Technicians, a labor organization hereafter called NABET.

The section 10 proceedings are a sequel to representation proceedings under section 9, 29 U.S.C.A. § 159, which arose out of a jurisdictional labor dispute between AFM and NABET. The dispute between the rival unions involved work known in the broadcasting industry as "platter turning."[2]. In the Chicago broadcasting stations of the respondent companies,[3] platter turning had for many years been done by musicians who were members of a local AFM union, known as Local 10, while in the companies' stations in other cities platter turning had been done by technicians who were members of NABET. Early in 1944 AFM undertook to negotiate contracts with the companies which would require them to employ musicians for platter turning in all their stations after June 1, 1944. NABET countered by initiating representation proceedings. After hearings in which all the parties in interest participated, the Board determined that the appropriate collective bargaining unit in which to include platter turners in Chicago was the unit of musicians, Local 10; but, outside Chicago, platter turners should be included in system-wide units of engineers and technicians. Since the companies, AFM and Local 10 consented to the certification of NABET in such units without further proceedings, no election was directed but NABET was certified as the bargaining representative of the technical employees of NBC and ABC respectively, outside Chicago.[4]

Thereafter the companies notified NABET that they would not bargain with it in respect to platter turners because AFM disputed the validity of the certification of NABET as the representative of platter turners and threatened the companies with strikes if they recognized it as the bargaining representative of such employees. On January 15, 1945 the Board brought the section 10 proceedings, charging unfair labor practices in violation of section 8(1) and (5) of the Act, 29 U.S.C.A. § 158(1) and (5) in refusing to bargain collectively with NABET. Copies of the complaint and notice of hearing were served on AFM and it became a party to the proceedings. By its order of March 31, 1945, now before us on petition for enforcement, the Board reaffirmed its unit determination, found that the companies had violated the Act in the respects charged, and ordered them to bargain with NABET upon request.

Neither of the respondent companies disputes the validity of the Board's order or opposes the granting of an order of enforcement. They urge, however, that the enforcement order be so drawn as to protect them from economic reprisals by AFM. Respondent AFM attacks the validity of the order and opposes the granting of an order of enforcement. It contends that the Board's determination that the appropriate unit, outside Chicago, consists of technical employees is arbitrary and unlawful because (1) NABET has never represented or bargained for platter turners as such, and (2) NABET is a

---

[1] 61 N.L.R.B. 21.

[2] The work of "platter turners," sometimes called turntable-operators, consists of placing phonograph records on one of the two turntables used in broadcasting studios for "on the air playback", adjusting it for either lateral or vertical cut records and fixing its speed in accordance with instructions appearing on the face of the record, opening the fader control, and, after the record has been played, removing it from the turntable.

[3] ABC's stations were formerly owned by Blue Network Co., Inc., which was merged with ABC on December 30, 1944. Our opinion will not differentiate between them, unless it expressly so states.

[4] 59 N.L.R.B. No. 97.

company-dominated union. In support of the latter contention it asks leave to adduce additional evidence before the Board.

 1. It is authoritatively settled that the Board's determination of an appropriate unit for collective bargaining will not be overturned unless it appears to be an arbitrary or capricious exercise of administrative discretion. Pittsburgh Plate Glass Co. v. National Labor Relations Board, 313 U.S. 146, 61 S.Ct. 908, 85 L.Ed. 1251; National Labor Relations Board v. Hearst Publications, 322 U.S. 111, 134, 64 S. Ct. 851, 88 L.Ed. 1170; Marlin-Rockwell Corporation v. National Labor Relations Board, 2 Cir., 116 F.2d 586, 587, certiorari denied 313 U.S. 594, 61 S.Ct. 1116, 85 L. Ed. 1548. The Board found that neither musical nor technical skill is essential for turntable operation and made its determination on the basis of the collective bargaining history.[5] AFM contends that the record is barren of evidence that NABET has ever bargained for platter turners. It is true that outside of Chicago the respondent companies have had no employees engaged exclusively in the work of platter turning; in other cities this work has been done by the engineer in the control room as an incident to his other duties. Nevertheless, the contracts between NBC and NABET since 1940 have all contained a provision substantially as follows:

"No NBC technical equipment other than television lighting shall be operated by any person other than a Technical Employee of NBC, as hereinbefore defined."

And "technical equipment" for the purpose of the contract was defined as "those facilities of the Engineering Department of NBC used in * * * on the air playback." We think the Board could properly conclude that these contracts did represent a collective bargaining as to the work of platter turning even though the employees who performed it were not exclusively engaged in such work, as were the platter turners in the Chicago stations of the companies.

It is also argued that in January 1944 the companies entered into valid contracts with AFM to employ musicians as platter turners in stations outside Chicago after June 1, 1944. But the Board's decision of March 31, 1945 states that at the representation proceeding as well as at the oral argument in the complaint proceeding it was admitted that the alleged agreements had been made subject to the Board's determination in a proper representation proceeding that platter turners, except in Chicago, would be included in a musician's unit represented by AFM. This condition was never met. We conclude that the Board's unit determination was not arbitrary or capricious but is supported by substantial evidence.

 2. The second contention of AFM is that the trial examiner at the representation hearing unlawfully excluded evidence that NABET was a company dominated union. The record, however, scarcely justifies the assertion that such evidence was offered and rejected.[6] Counsel for

---

[5] On this subject the Board stated: "In the absence of other compelling circumstances, we are of the opinion that the collective bargaining history is determinative of the issue in this proceeding. The status of turntable operating work has been crystallized by long-standing custom in the Companies. On the one hand, Local 10 has had agreements in Chicago from the very infancy of the radio broadcasting industry which have covered turntable operators and, in the development of broadcasting techniques, the Companies have adjusted their operations in Chicago by placing their turntables in the broadcasting studios where they can be operated most conveniently by employees in musicians' units. On the other hand, studio engineers, employees in technical units, members of the N.A.B.E.T. and its predecessor, have performed turntable work outside Chicago for at least 4 years. The location of the turntables in the engineer's booth was the inevitable result of this situation.

We conclude that the turntable operators outside Chicago should be included in units of technical employees, while those in Chicago should be included in units of musicians."

[6] At the representation hearing on September 28, 1944 the following occurred:

"Trial Examiner Paradise: * * * May it be stipulated that the National Association of Broadcast Engineers and Technicians is a labor organization within the meaning of the National Labor Relations Act, * * *?

"Mr. O'Donoghue: Yes.

"Mr. Padway: I want to say this. We won't say yes and we won't say no. Put that on the record at this time. Our people are of the opinion that NABET, so-called, is not a labor organization within the Act, and that it is company-dominated. Since that is not an issue in this proceeding, I take it if evidence were offered you would probably refuse to take it. Am I right on that?

AFM was evidently familiar with the Board's practice ordinarily to require an issue of domination to be tried in a separate proceeding and he seems to have acquiesced in this procedure. No objection to it was voiced before the trial examiner nor, so far as appears, was any criticism of his ruling made by AFM in its oral argument at the hearing before the Board on the trial examiner's report. The Board's brief states that this general practice was adopted in representation proceedings in order to avoid the delay that would ensue from the detailed investigation and hearings which must precede the adjudication of unfair labor practice issues.[7] We believe the adoption of such practice is within the Board's discretion. In the Pittsburgh Plate Glass case, 313 U.S. 146, at page 156, 61 S.Ct. 914, 85 L.Ed. 1251, Mr. Justice Reed said:

" * * * It can hardly be said that the domination of a labor union by an employer is irrelevant to the question of what unit is appropriate for the choice of labor representative but certainly it is a collateral matter in that investigation. * * * In short, domination pertains directly to representation but influences the choice of a unit only casually."

In the present case not only did counsel for AFM appear to acquiesce in the Board's practice of requiring an issue of domination to be tried in a separate proceeding, but the record shows inexcusable delay on the part of AFM in initiating such a proceeding. Both during the pendency of the representation proceeding and afterwards, there was ample opportunity for AFM to bring to the attention of the Board charges of company domination of NABET. The representation proceeding was initiated in April 1944, the hearings were held in September and the unit determination and certification were made on November 24th. Not until January 27, 1945, three days before the date set for the hearing of the refusal to bargain complaint did AFM file its charges. Then at the January 30th hearing it applied for a postponement pending the investigation of the charges filed three days before. In our opinion there was no abuse of discretion in the trial examiner's denial of a postponement.

No adequate excuse is shown for AFM's delay in filing charges and a majority of the court are of opinion that its motion to remand the proceedings for additional evidence on this subject should be denied. The motion papers show that on March 7, 1945, AFM was notified by the Regional Director that its charges had been carefully investigated and he was refusing to issue a complaint. AFM thereupon filed a request of a review of the dismissal of the charges, and on April 17th the Chairman of the Board wrote Mr. Padway that the Board had concluded that a complaint should not be issued. There is nothing in the motion papers to indicate that a remand for additional evidence would produce anything new or additional to what the Board has already investigated. Determination whether or not to file a complaint after investigating charges of unfair labor practices is discretionary with the Board. See National Labor Relations Board v. Indiana & Michigan Electric Co., 318 U.S. 9, 18, 19, 63 S.Ct. 394, 87 L.Ed. 579; Jacobsen v. National Labor Relations Board, 3 Cir., 120 F.2d 96, 100.

---

"Trial Examiner Paradise: Yes.
* * * * * * * *
"Mr. O'Donoghue: But for the purpose of this hearing, it is a labor organization?

"Mr. Padway: For the purpose of this hearing it is a labor organization within the Act. In saying that, I do not foreclose myself or our organization from establishing in any other proceeding that it is dominated. Will that be all right?

"Trial Examiner Paradise: All right."

[7] The Board's brief states that exceptions to the general practice have been recognized "where the constitution of a labor organization participating in a representation proceeding on its face discloses the unlawful character of the organization, Matter of Phelps Dodge Corp., 6 N.L.R.B. 624; where the organization has been previously found by the Board in a complaint proceeding to be company dominated, National Labor Relations Board v. Falk Corporation, 308 U.S. 453, 60 S.Ct. 307, 84 L.Ed. 396; where a previously disestablished organization appears in a representative proceeding under a different name and the parties have been apprised in advance of the hearing that the issue of identity would be litigated, Matter of Baltimore Transit Co., 59 N.L.R.B. No. 35; and where the evidence has fortuitously disclosed employer participation in the formation of the organization, Matter of Douglas Aircraft Co., 53 N.L.R.B. 486; Matter of The Toledo Stamping Mfg. Co., 55 N.L.R.B. 865. The instant case falls into none of these categories."

3. For the reasons above stated we think the attacks upon the validity of the order must fail and we reach the question whether the petition for enforcement should be granted. It is plain that the respondent companies' refusal to bargain with the union certified by a valid order of the Board was a violation of section 8(1) and (5) of the Act, 29 U.S.C.A. § 158(1) (5). It is equally plain, and firmly established by authority, that an unfair labor practice cannot be excused because of economic pressure exerted against the employer by one of the unions engaged in a jurisdictional labor dispute. See National Labor Relations Board v. Isthmian S. S. Co., 2 Cir., 126 F.2d 598, 599; National Labor Relations Board v. John Engelhorn & Sons, 3 Cir., 134 F.2d 553, 557-8; South Atlantic S. S. Co. v. National Labor Relations Board, 5 Cir., 116 F.2d 480, certiorari denied 313 U.S. 582, 61 S.Ct. 1101, 85 L.Ed. 1538; National Labor Relations Board v. Goodyear Tire & Rubber Co., 5 Cir., 129 F.2d 661, 664; National Labor Relations Board v. Hudson Motor Car Co., 6 Cir., 128 F.2d 528, 532; McQuay-Norris Mfg. Co. v. National Labor Relations Board, 7 Cir., 116 F.2d 748, 752, certiorari denied 313 U.S. 565, 61 S.Ct. 843, 85 L.Ed. 1524; National Labor Relations Board v. Gluek Brewing Co., 8 Cir., 144 F.2d 847, 853; Warehousemen's Union v. National Labor Relations Board, 74 App.D.C. 28, 121 F.2d 84, certiorari denied 314 U.S. 674, 62 S.Ct. 138, 86 L.Ed. 539. Indeed, no contention to the contrary has been advanced by any of the parties in the case at bar. Consequently, the Board's petition should be granted.

4. The final question is whether the enforcement order should run against AFM as well as the respondent companies. That section 10(h), 29 U.S.C.A. § 160(h), gives the court authority to make such a restraining order is argued by ABC and NBC, and nothing has been asserted in opposition to it. We are not, however, convinced of the necessity of expressly restraining AFM. At the oral argument before the Board in the section 10 proceeding Mr. Padway said:

"We can't tell the company what to do but we hope it will do the logical and proper thing, namely, to refuse recognition until it gets to the Circuit Court of Appeals and let the Circuit Court of Appeals then in the section 10 proceedings determine whether your finding in the section 9 proceeding was correct. * * *"

That has occurred and we shall not assume that AFM will not respect our decision. If an attempt to prevent the companies from complying with our order should be made it would seem that the ordinary contempt procedures available against a person with knowledge of the decree although not named in it would enable the court to protect its order. Accordingly the enforcement order will issue in the customary form directed against the respondent companies only.

CLARK, Circuit Judge (dissenting).

Due process, the Act, and the Board's own rules of procedure all seem to me to require the conclusion that AFM here cannot be deprived of the opportunity of presenting whatever evidence it has that NABET is company dominated, and hence that its motion to remand for that purpose should be granted. A hearing in representation proceedings is mandatory under § 9(c), 29 U.S.C.A. § 159(c); cf. Inland Empire Dist. Council v. Graham, D.C. W.D.Wash., 53 F.Supp. 369, appeal dismissed 9 Cir., 142 F.2d 455; and the Board's rules specifically so require, 29 U.S.C.A.Appendix, §§ 203.6, 203.7, with a full inquiry into the question of representation, and with the right to any party "to call, examine, and cross-examine witnesses," as provided in ibid. § 202.25. The only reason for a hearing is to hear relevant evidence; and the proffered evidence is clearly relevant. N.L.R.B. v. Falk Corporation, 308 U.S. 453, 461, 462, 60 S.Ct. 307, 84 L.Ed. 396; Pittsburgh Plate Glass Co. v. N.L.R.B., 313 U.S. 146, 61 S.Ct. 908, 85 L.Ed. 1251; Madden v. Brotherhood and Union of Transit Employees, 4 Cir., 147 F.2d 439, 441, 442. The petitions for representation were made by NABET and the employers, and AFM was a party. It is well settled that company domination is to be presumed where disconnection with a former company union is not shown, N.L.R.B. v. Standard Oil Co., 2 Cir., 138 F.2d 885; Westinghouse Electric & Manufacturing Co. v. N.L.R.B., 2 Cir., 112 F.2d 657, affirmed per curiam 312 U.S. 660, 61 S.Ct. 736, 85 L.Ed. 1108; and here AFM's evidence points directly to such original domination. This is the first occasion AFM has had to contest the Board's asserted "consistent practice," since there is

no direct review of representation proceedings. Pittsburgh Plate Glass Co. v. N.L.R.B., supra; American Federation of Labor v. N.L.R.B., 308 U.S. 401, 60 S.Ct. 300, 84 L.Ed. 347. And refusal to receive relevant evidence is appropriate ground for the grant of a motion to adduce additional evidence. N.L.R.B. v. New York Merchandise Co., 2 Cir., 134 F.2d 949.

In short, AFM has not been accorded the full hearing to which it is entitled, and is now seeking, at its first opportunity, and in the only way open to it, to procure that full hearing. Indeed, its right would seem to me so clear that I am rather surprised at the Board's vigorous objection and assertion of a contrary practice "to leave the aggrieved parties to their right to file charges under Section 10 of the Act"—a practice all the more doubtful, since it is not consistently followed, as the Board itself showed in its brief quoted in note 7 of the opinion. And in the Madden case, supra, 4 Cir., 147 F.2d 439, 441, involving the employees of the Baltimore Transit Company and the Baltimore Coach Company, the court, in reversing an injunction against the conduct of an election ordered by the Board after hearing and deciding the question of domination, D.C.Md., 58 F. Supp. 366, said quite properly: "It was clearly not the intention of Congress that the Board should place on the ballot in an election an employer dominated organization (N.L.R.B. v. Falk Corporation, 308 U.S. 453, 461, 462, 60 S.Ct. 307, 84 L.Ed. 396); and it is inconceivable that it should have been intended that the summary procedure provided by section 9(c) should be delayed while complaint proceedings under section 10 were being conducted." Indeed, the Board makes its own answer to its practice when it says in its brief: "But, plainly, the Board's refusal to issue a complaint upon that charge is not relevant to the issues in the instant proceedings nor does the evidence sought to be adduced have any bearing upon them. Moreover, both the Act and judicial authority make it clear that the Board may in its discretion refuse to issue a complaint and its action in that respect is not subject to judicial review." The action of a prosecutor in refusing to prosecute can hardly be made the subject of direct review; and the only relevancy of reference to the section 10 procedure would seem to be a more complete demonstration that AFM is seeking here and now the only real relief open to it.

The Board's fear of great delay in representation proceedings is answered by the statutory requirement of a hearing which must be had, whatever the delay. And if it must be had anyhow, it will certainly take little additional time to determine whether or not a party can establish a *prima facie* case in support of its claims, and thus only force an extended hearing. Our holding here upholding such a *practice* as discretionary with the Board, notwithstanding the *statute* and the Board's own published *rules,* seems to me seriously disturbing. I read the Pittsburgh Plate Glass case, supra, cited in support of this conclusion, as pointing rather to the contrary, even without reference to the vigorous opinion of the present Chief Justice for the dissenting Justices to the very point that relevant evidence was erroneously refused. For that case has no suggestion that relevant evidence may be refused in a section 9 hearing because charges may be filed under section 10; it holds only that the evidence there sought to be adduced, in view of the facts already known to the Board, would not have required a change in the result. The issue there was one of the effectiveness of a bargaining agent representing a plurality of the employer's plants as against the independence of separate units (an issue upon which the Board's views seem to have been changing towards the latter view, 51 Yale L.J. 155–162); and the majority held that the Board, having a full picture before it, could favor the broader bargaining unit because of its advantages, even if steps must be taken to stop the company domination. It, together with the decision below, 8 Cir., 113 F.2d 698, has been taken by the court rendering the original decision as reinforcing the requirement that the Board must consider relevant evidence. Donnelly Garment Co. v. N.L.R.B., 8 Cir., 123 F.2d 215, 222, 223. Of course, had the Board here determined that NABET, even if company dominated, must nevertheless be the employees' representative, we would have been faced with a different problem of review.

In denying AFM's motion, the opinion relies on two further grounds, which are not pressed by the Board and are essentially inconsistent with the Board's position. The first is that counsel acquiesced

in the Board's practice so far as present proceedings are concerned, intending only to attack it elsewhere. And the second is that AFM was guilty of inexcusable delay in filing charges under section 10. As to the second, it must fall if we accept the Board's view (as I think we must) of the complete irrelevancy of the section 10 issue here and the absence of any right of review of the Board's decision not to issue a complaint. But it is to be noted that AFM did file such charges, without result, in 1942, and that it again filed the same charges just before the hearing in January, 1945, on the real proceedings to enforce the results of the election, i. e., contemporaneously with the taking of steps by the Board for putting its decision into effect. This does not seem like inexcusable delay; it does prompt the question as to how many footless collateral proceedings are necessary that AFM preserve its right to a full hearing in the proceeding to which it is a direct party.

The first ground seems also answered by the quotation from the record in the opinion, viewed in the light of the background of the Board's practice and its own simple stark submission here, "that the *Board* committed no error in *refusing* to permit in the representation proceedings an inquiry into the legality of NABET." (Italics supplied.) Clearly counsel was bowing to the clear ruling of the Board, so that the hearing might proceed, but *expressly* reserving the right to establish "in any other proceeding that it is dominated." Not only is this quite completely another proceeding, but, as we have seen, it is the *only one* where the issue can really be raised judicially or reviewed judicially. In view of the background, the intent of counsel seems so clear that the result is thus made to turn upon his mischoice of appropriate words in the midst of trial, though no one was or could be misled thereby; and, quite obviously, no different result would have followed had he argued all day and with the most careful choice of precise English. This seems to me a result harsher than that now reached in federal courts of law where the exception has been abolished. Federal Rules of Civil Procedure, rule 46, 28 U.S.C.A. following section 723c. I suggest that these parties, like litigants in court, should not suffer important and damaging loss of rights because of hasty, though not misleading, mistakes of counsel during trial, and that tranquility in labor relations will not be promoted by holding otherwise.

Not only has AFM not delayed these proceedings in the slightest, so far as the record shows, but they have attained an almost unknown speed for labor cases, since even the representation hearing occurred only last fall. While we certainly ought not to decry expedition when it does occur, yet it is proper to suggest that this is not the case where speed is likely to safeguard rights which the Act aims to protect. On the contrary, the few weeks needed at most to determine if AFM has a case will cause harm to no one, but will impress all the litigants as a real endeavor to secure a completely fair and final settlement of litigation which otherwise bids fair to leave substantial union interests dissatisfied not merely with the outcome, but with the means by which it has been achieved.